1 Kevin J. Hamilton, WA Bar No. 15648*
Heath L. Hyatt, WA Bar No. 54141*
2 Margo S. Jasukaitis, WA Bar No. 57045*
PERKINS COIE LLP
3 1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
4 Telephone:     +1.206.359.8000
KHamilton@perkinscoie.com
5 HHyatt@perkinscoie.com
MJasukaitis@perkinscoie.com
6
Daniel H. Stewart
7 NV Bar No. 11287
BROWNSTEIN HYATT FARBER SCHRECK, LLP
8 100 North City Parkway, Suite 1600
Las Vegas, NV 89106
9 Telephone:     +1.702.464.7018
dstewart@bhfs.com
10
*Attorneys for the Democratic National Committee*
11 *Motion for Admission Pro Hac Vice Pending; Attorney has complied with LR IA 11-2*

12 **UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
13

14 REPUBLICAN NATIONAL COMMITTEE;          Case No. 3:24-cv-00198
NEVADA REPUBLICAN PARTY;
15 DONALD J. TRUMP FOR PRESIDENT            **MOTION TO INTERVENE**
2024, INC.; and DONALD J. SZYMANSKI,
16
        Plaintiffs,
17
v.
18
CARI-ANN BURGESS, *in her official*
19 *capacity as the Washoe County Registrar of*
*Voters*; JAN GALASSINI, *in her official*
20 *capacity as the Washoe County Clerk*;
LORENA PORTILLO, *in her official capacity*
21 *as the Clark County Registrar of Voters*;
LYNN MARIE GOYA, *in her official*
22 *capacity as the Clark County Clerk*;
FRANCISCO AGUILAR, *in his official*
23 *capacity as Nevada Secretary of State*,

        Defendants.
24

25 MOTION TO INTERVENE

26 167304893.4

**MOTION TO INTERVENE AS DEFENDANT**

Pursuant to Federal Rule of Civil Procedure 24(a), the Democratic National Committee ("DNC" or "Proposed Intervenor") respectfully moves to intervene as a defendant in this case as a matter of right. Alternatively, the DNC moves for permissive intervention under Rule 24(b). This Motion is made and based on the papers and pleadings on file in this case and the Points and Authorities set forth below. A proposed Answer is attached as Exhibit A to this Motion and a proposed Motion to Dismiss is attached as Exhibit B consistent with Rule 24(c).[1]

**INTRODUCTION**

Proposed Intervenor has abundant good cause to seek intervention both as a matter of right and permissively. The Republican National Committee ("RNC"), Nevada Republican Party, Donald J. Trump for President, Inc. 2024 ("Trump Campaign"), and Donald J. Szymanski seek to undermine a commonsense and convenient voting option relied on by thousands of

---

[1] The text of Federal Rule of Civil Procedure 24(c) requires a proposed defendant-intervenor attach a proposed "pleading" to a motion to intervene. *See* Fed. R. Civ. P. 24(c). Rule 7(a) identifies seven kinds of "pleading," and does not include Rule 12(b) motions to dismiss. *See* Fed. R. Civ. P. 7(a). As a result, even though a named defendant may file a motion to dismiss under Rule 12(b) before serving one of the pleadings identified in Rule 7(a), it is not clear whether the same opportunity is available to intervenor-defendants. This matters because under Rule 12(b), motions asserting certain defenses, including failure to state a claim upon which relief can be granted, "*must* be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b) (emphasis added). Thus, if "pleading" as used in Rule 24 is limited to the pleadings identified in Rule 7, it is impossible for intervenor-defendants to file a timely 12(b)(6) motion to dismiss. Despite this, courts have held a proposed motion to dismiss satisfies Rule 24(c)'s requirement. *See, e.g., Ctr. for Biological Diversity v. Jewell*, NO. 15-cv-00019, 2015 WL 13037049, at *2 (D. Ariz. May 12, 2015) ("The Court finds that the stricken Motion to Dismiss would have complied with the substantive requirements of Rule 24(c); it puts the existing parties on sufficient notice of the State's claim or defense, such that the procedural requirements of Rule 24(c) would be met."). Proposed Intervenor-Defendant respectfully requests the Court accept the attached Proposed Motion to Dismiss or, in the alternative, if the Court determines a proposed answer is required to comply with Rule 24(c), accept the attached Proposed Answer and construe and docket the attached Motion to Dismiss as a Motion for Judgment on the Pleadings under Rule 12(c).

MOTION TO INTERVENE—1

167304893.4

Nevada voters in every election *one month* before Nevada voters cast ballots in the Nevada primary election and *less than six months* before a presidential election.

Plaintiffs take issue with Nevada Revised Statute 293.269921, which allows election officials to accept and count ballots mailed by election day but received up to four days later.

The issue, according to Plaintiffs, is that federal law requires there be "only one federal Election Day" and by accepting ballots cast before election day but not received until after it, Nevada is impermissibly "holding voting open" beyond that designated federal election day. ECF No. 1 at 6, ¶ 46. If Plaintiffs were correct in their narrow interpretation of the United States Constitution and federal law, then the consequences for Nevada elections, and elections across the country, would be nothing short of profound.

The parties will dispute the merits at a later point, but there can be no reasonable dispute that the DNC satisfies the criteria for intervention as of right or permissively. Given the stakes of this litigation, the DNC undoubtedly has significant interests in this action which, if successful, would force the DNC to expend significant resources and would burden its constituents and members. Further, the existing parties do not adequately represent the DNC's interests. Proposed Intervenor also satisfies the criteria for permissive intervention. The DNC—and its counterpart the RNC—is regularly permitted to intervene in suits challenging state election procedures. DNC Counsel have conferred with counsel for the existing parties and no defendants object to the DNC's intervention in this matter. Plaintiffs indicated they would alert the Court to their position after reviewing the intervention papers.

For these reasons, the DNC respectfully submits that it should be permitted to intervene as of right, or, in the alternative, should be granted permissive intervention.

MOTION TO INTERVENE—2

167304893.4

# POINTS AND AUTHORITIES

## I.      Background

### A.      The Democratic National Committee

The DNC is the oldest continuing party committee in the United States, dedicated to electing Democratic candidates to all levels of public office nationwide. Its organizational purposes and functions are to communicate the Democratic Party's position and messages on issues; protect voters' rights; and aid and encourage the election of Democratic candidates at the national, state, and local levels, including by persuading and organizing citizens not only to register to vote as Democrats, but also to cast their ballots for Democratic candidates. To accomplish its mission, the DNC assists state parties and candidates by providing active support through the development of programs benefiting Democratic candidates. The DNC works with individual members and constituents across Nevada, educating Democratic voters in the state, and working to ensure they have access to the franchise.

The DNC is composed of its chair, vice chairs, and more than 200 members elected by Democrats in every U.S. state and territory and the District of Columbia. The DNC also represents millions of voters scattered around the country, including many within Nevada.

### B.      Nevada's mail ballot statute

Nevada adopted universal mail voting effective January 1, 2022. 2021 N.V. AB 321 (June 14, 2021). State law requires county clerks and registrars to mail every active registered voter a ballot, with some limited exceptions. NRS 293.269911(1), (2). Voters who receive a ballot may return it either by mail or by dropping the ballot in a designated drop box. NRS 293.269921(1). To be counted, mail ballots must be postmarked on or before election day and received no later than 5:00 p.m. on the fourth day after election day. NRS 293.269921(1)(b).

MOTION TO INTERVENE—3

When the date of a ballot's postmark cannot be determined, Nevada law presumes the ballot was timely submitted as long as it is received before 5:00 p.m. on the third day after election day. NRS 293.269921(2).

### C.      Plaintiffs' lawsuit

Plaintiffs seek to declare invalid and enjoin the portions of Nevada law that allow election officials to count ballots received up to four days after election day. *See generally* ECF No. 1. Plaintiffs specifically allege that Nevada law runs afoul of 3 U.S.C. § 1 and 2 U.S.C. §§ 1, 7 because it permits state officials to count ballots received after election day. The problem, Plaintiffs insist, is that "[t]here is only one federal election day," and Nevada violates federal law "[b]y holding voting open beyond the federal Election Day." *Id.* at 6, ¶ 46. Plaintiffs also bring two claims under 42 U.S.C. § 1983, erroneously contending that Nevada's statutory scheme counts illegitimate votes and, thus, dilutes "honest votes." *Id.* at ¶¶ 79–80.

Among other relief, Plaintiffs seek to enjoin the ballot receipt deadline in the "November 2024 general election" that is *less than six months away. Id.* at 16, ¶ B.

## II.      Argument

### A.      Legal standard

"Rule 24 traditionally receives liberal construction in favor of applicants for intervention." *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003), *as amended* (May 13, 2003); *see also W. Expl. LLC v. U.S. Dep't of the Interior*, No. 3:15-cv-00491-MMD-VPC, 2016 WL 355122, at *2 (D. Nev. Jan. 28, 2016) (noting Rule 24's liberal construction and "focus[] on practical considerations rather than technical distinctions").

The Ninth Circuit "require[s] applicants for intervention as of right pursuant to Rule 24(a)(2) to meet a four-part test":

MOTION TO INTERVENE—4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1148 (9th Cir. 2010) (quoting *Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006)).

"Rule 24(b) permits the Court to allow anyone to intervene who submits a timely motion and 'has a claim or defense that shares with the main action a common question of law or fact.'" *Nevada v. United States*, No. 3:18-cv-569-MMD-CBC, 2019 WL 718825, at *2 (D. Nev. Jan. 14, 2019) (quoting Fed. R. Civ. P. 24(b)(1)(B)). In addition to a common question of law or fact, permissive intervention under Rule 24(b) also requires (1) a timely motion and (2) an independent basis for the court's jurisdiction. See *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998).

Finally, Rule 24(c) requires that a motion to intervene "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c).

### B.      The DNC is entitled to intervene as a matter of right.

The DNC satisfies all four requirements for intervention as of right. *See* Fed. R. Civ. P. 24(a). Specifically, (1) this application for intervention is indisputably timely, (2) the DNC has an interest in the subject of these actions, (3) the disposition of these cases will impair the DNC's ability to protect its interests, and (4) there is inadequate representation of the DNC's interests by existing parties to this litigation. *See Aerojet Gen. Corp.*, 606 F.3d at 1148 (reciting four-element test). The DNC (and other party committees) is regularly permitted to intervene as of right in suits regarding states' election procedures. *See, e.g., Paher v. Cegavske*, No. 3:20-cv-00243,

MOTION TO INTERVENE—5

2020 WL 2042365, at *3 (D. Nev. Apr. 28, 2020); *Issa v. Newsom*, No. 2:20-cv-01044, 2020 WL 3074351, at *4 (E.D. Cal. June 10, 2020). There is no reason this case should be treated any differently.

> **1.      This motion is timely.**

First, the motion is timely. "In determining whether a motion for intervention is timely, [courts in this Circuit] consider three factors: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) (citation omitted). Each of these considerations supports a finding of timeliness here. The timeliness of this motion cannot be seriously questioned.

First, this case is at its earliest stage. The Complaint was filed on May 3, 2024, just ten days ago. *See Paher*, 2020 WL 2042365, at *2 (finding "no question" intervention within a week of filing was timely). And the DNC filed this motion before any defendant appeared in the case or any substantive activity occurred. This case has neither a trial date nor an entered case schedule. *See, e.g.*, *Nevada*, 2019 WL 718825, at *2 (granting motion to intervene filed several weeks after action commenced); *W. Expl.*, 2016 WL 355122, at *2 (granting motion to intervene filed nearly two months after action commenced).

All other factors also support the timeliness of the DNC's motion. Given the early stage of proceedings, the existing parties will suffer no prejudice if the DNC intervenes. The DNC is also prepared to adhere to any case schedule set by the Court without delay. *See, e.g.*, *W. States Trucking Ass'n v. Schoorl*, No. 2:18-CV-1989-MCE-KJN, 2018 WL 5920148, at *1 (E.D. Cal. Nov. 13, 2018) (finding "no delay" where party "sought to intervene [at] the very outset of litigation").

MOTION TO INTERVENE—6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000

### 2. The DNC has a significant, protectable interest in the outcome of this litigation.

The Ninth Circuit "follow[s] the guidance … that 'if an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.'" *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (citing Fed. R. Civ. P. 24 advisory committee's notes). "[N]o specific legal or equitable interest need be established" to satisfy the interest requirement in Rule 24(a)(2). *See Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (internal quotation marks omitted). Applicants need only establish that their interest is "protectable under some law and that there is a relationship between the legally protected interest and the claims at issue." *Id.* Courts have held qualifying interests include an organizational interest in needing "to expend additional resources . . . should [a challenged] election law change" and "an associational interest on behalf of its members . . . should the law change" and threaten those members' votes. *Bost v. Illinois State Bd. of Elections*, 75 F.4th 682, 687 (7th Cir. 2023); *see also La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022) (holding sufficient interests include a political committee's need to "expend significant resources" based on a new election law that "regulate[d] the conduct of the Committees' volunteers and poll watchers"). Courts have also found qualifying interests where a lawsuit threatens to interfere with a political party's electoral prospects. *See Owen v. Mulligan*, 640 F.2d 1130, 1132 (9th Cir. 1981) (holding "the potential loss of an election" is sufficient interest for intervention).

This standard is easily met here: Plaintiffs outright admit the relief they seek in this litigation will directly affect Democratic voters and, by extension, Democratic candidates and the DNC. *See* ECF No. 1 at ¶¶ 56–59 (explaining "Democrats disproportionately vote[] by mail compared to Republicans" and "Democrats tend to vote later").

MOTION TO INTERVENE—7

1    Furthermore, the DNC has significant organizational and associational interests in this

2    case.

3    <u>Organizational interests</u>: The core mission of Proposed Intervenor is maximizing voter

4    turnout for Democratic candidates in federal, state, and local elections. To do that in Nevada, as

5    it does in any other state, the DNC hires employees and recruits volunteers to educate voters on

6    whether, how, when, and where they can vote under the rules prescribed by the state. Given the

7    close proximity of the primary and general elections, the DNC has already begun preparing for

8    the upcoming elections under current law. These expenditures "to educate their members on the

9    election procedures . . . are routinely found to constitute significant protectable interests." *Issa*,

10   2020 WL 3074351, at *3; *see Bost*, 75 F.4th at 687 (finding an interest sufficient where a

11   political party "would have to expend additional resources . . . should the law change").

12   Courts in the Ninth Circuit, including this one, have found "significant protectable

13   interests" where, as here, "Plaintiffs' success on their claims would disrupt the organizational

14   intervenors' efforts to promote the franchise and ensure the election of Democratic Party

15   candidates." *Paher*, 2020 WL 2042365, at *2; *see also Issa*, 2020 WL 3074351, at *3

16   (concluding significant protectable interests exist because if "Plaintiffs were to succeed on their

17   claims, then the Proposed Intervenor would have to devote its limited resources to educating

18   their members on California's current voting-by-mail system and assisting those members with

19   the preparation of applications to vote by mail"). If Plaintiffs succeed in enjoining portions of

20   Nevada's mail ballot statute, the DNC will have to divert and expend resources to encourage

21   Nevada voters to complete and mail their ballots well before election day to avoid

22   disenfranchisement—a particularly heavy lift given the sheer volume of voters who submit their

23   ballots by mail in Nevada. *See Presidential Preference Primary*, Silver State Election Results

24

25   MOTION TO INTERVENE—8

26   167304893.4

2024, https://silverstateelection.nv.gov/vote-turnout/ (last visited May 6, 2024) (reporting

78.26% of ballots cast by mail in most recent Nevada election). Avoiding that expenditure is a

"direct" and "substantial" interest of the DNC itself, separate from the interests of its constituent

members. *See La Union*, 29 F.4th at 306.

A recent case from the Fifth Circuit is squarely on point. In *La Union del Pueblo Entero*

*v. Abbott*, the Fifth Circuit affirmed the RNC's right to intervene in a suit challenging a Texas

law "pertaining to voter registration, voting by mail, poll watchers, and more" because the RNC

"expend[s] significant resources in the recruiting and training of volunteers and poll watchers

who participate in the election process" and the law at issue "unquestionably regulates the

conduct of the Committees' volunteers and poll watchers." *Id.* at 304, 306. That reasoning

applies equally here. The challenged statute implicates the right of all Nevadans to have their

ballot counted; the DNC expends significant resources educating voters about voting

requirements in their state and facilitating the timely completion and submission of ballots. The

law at issue "unquestionably" implicates the conduct of the DNC's volunteers and staff engaged

in voter education initiatives.

Plaintiffs frame their interest in this case not just in terms of how they plan to expend

their resources, but also in terms of "competitive electoral harms." ECF No. 1 at ¶ 6. Any

"competitive electoral harm" will, by the same token, impact the DNC as well. *Cf. Mecinas v.*

*Hobbs*, 30 F.4th 890, 898 (9th Cir. 2022) (holding election regulations that "make[] the

competitive landscape worse for a candidate or that candidate's party" confer standing).

Associational interests: Political entities like the DNC have an "associational interest on

behalf of [their] members" to challenge or defend a law that might affect those members' right to

vote. *Bost*, 75 F.4th at 687; *see also Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 189 &

MOTION TO INTERVENE—9

167304893.4

n.7 (2008) (holding, in the more demanding context of standing, that a political party had "standing to challenge the validity of" a law that imposed voting requirements on the party's members). Proposed Intervenor's members are both voters and candidates for elected office, and Plaintiffs' lawsuit threatens the rights of both.

This suit implicates the rights of all DNC voters "to cast their ballots and have them counted"—a right secured by the Constitution. *See United States v. Classic*, 313 U.S. 299, 315 (1941). Indeed, "[t]here is no right more basic in our democracy than the right to participate in electing our political leaders." *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 191 (2014). If Plaintiffs' challenge is successful, numerous Democratic Party voters (indeed, numerous voters period) could lose the ability to have their votes counted. The DNC has an overriding interest in preventing that outcome.

This suit also threatens to prevent the election of Democratic candidates. ECF No. 1 at ¶¶ 56–59 (explaining "Democrats disproportionately vote[] by mail compared to Republicans"). Interference with a political party's electoral prospects constitutes a particularized interest. *E.g.*, *Owen v. Mulligan*, 640 F.2d 1130, 1132 (9th Cir. 1981) (holding "the potential loss of an election" is sufficient interest for intervention); *cf. Mecinas*, 30 F.4th at 898 (holding DNC "has standing to sue based on the ongoing, unfair advantage conferred to their rival candidates by the Ballot Order Statute"). This Court and others in the Ninth Circuit have permitted political parties to intervene on these grounds. *See, e.g.*, *Paher*, 2020 WL 2042365, at *2 (granting intervention to DNC and related groups where they "maintain significant protectable interests" in their "efforts to promote the franchise and ensure the election of Democratic Party candidates"); *Issa*, 2020 WL 3074351, at *3 (granting intervention of state party where "Plaintiffs' success on their claims would disrupt the organizational intervenors' efforts to promote the franchise and ensure

MOTION TO INTERVENE—10

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000

the election of Democratic Party candidates") (citation omitted). No other defendant has an

interest in the election of candidates, let alone Democratic candidates specifically.

If Plaintiffs succeed in enjoining NRS 293.269921, then it will undoubtedly (negatively)

affect both the DNC's voter-members' ability to vote and candidate members' ability to win. *See*

*Sandusky Cnty. Democratic Party v. Blackwell*, 387 F.3d 565, 573–74 (6th Cir. 2004) (per

curiam) ("Appellees have standing to assert, at least, the rights of their members who will vote in

the November 2004 election.").

Finally, if Plaintiffs have standing to file this suit, the DNC has the "mirror image"

interest in opposing it. *See Democratic Nat'l Comm. v. Bostelmann*, No. 20-cv-249, 2020 WL

1505640, at *5 (W.D. Wis. Mar. 28, 2020) (allowing the RNC and Republican Party of

Wisconsin to intervene "as they are uniquely qualified to represent the mirror-image interests of

the plaintiffs, as direct counterparts to the DNC/[Democratic Party of Wisconsin]") (internal

quotations omitted), *modified on reconsideration*, 451 F. Supp. 3d 952 (W.D. Wis. 2020).

Indeed, courts regularly grant intervention to Democratic Party organizations in suits brought by

their Republican counterparts, and vice versa. *See, e.g.*, *Ariz. Democratic Party v. Hobbs*, No.

CV-20-01143, 2020 WL 6559160, at *2 (D. Ariz. June 26, 2020) (granting intervention to the

RNC and Arizona Republican Party).

The DNC is "uniquely qualified" to defend against suits like this one. *E.g.*, *Bostelmann*,

2020 WL 1505640, at *5. Plaintiffs' lawsuit cuts at the very core of the DNC's purpose to

protect the legal rights of voters and encourage the election of Democratic candidates at the

national, state, and local levels. As such, the DNC's interests are particularized and legally

protectable, satisfying Rule 24(a)(2).

MOTION TO INTERVENE—11

### 3. Denial of the Motion will impair the DNC's ability to protect its interests.

A proposed intervenor bears the "minimal" burden of showing the relevant suit "may" impair or impede their ability to protect their interests. *Brumfield v. Dodd*, 749 F.3d 339, 344 & n.2 (5th Cir. 2014) (quoting *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999)). Courts have "little difficulty" finding that burden satisfied when the proposed intervenor has a "significant protectable interest." *Citizens for Balanced Use*, 647 F.3d at 898 (citation omitted).

There is little question that disposition of these matters will impair the DNC's ability to protect its interests. Any decision invalidating NRS 293.269921 will place additional burdens on Nevada voters—including members of the Democratic Party and voters who would support Democratic candidates. In the Presidential Preference Primary conducted earlier this year, nearly seventy-nine percent of votes were cast by mail. *See Presidential Preference Primary*, Silver State Election Results 2024, https://silverstateelection.nv.gov/vote-turnout/ (last visited May 6, 2024). Those voters submitted mail ballots with the understanding that, to be counted, their ballot need only be postmarked—not received—by election day. Plaintiffs' lawsuit threatens to upend that established practice, creating confusion that would require significant voter outreach to correct.

Put another way, if Plaintiffs succeed, numerous voters, including many Democratic voters, risk disenfranchisement—an outcome that directly threatens the DNC's interests. As detailed above, an adverse ruling would, among other things, cause significant upheaval in how Nevada administers its elections. The DNC educates voters about when, where, and how to return mail ballots, based on Nevada election law. As Plaintiffs themselves acknowledge, "[m]ail ballots from Democratic voters … tend to arrive late, *in part because 'Democratic get-out-the-vote drives—which habitually occur shortly before election day—may delay maximum*

MOTION TO INTERVENE—12

*Democratic voting across-the-board*, and produce a 'blue shift' in late mail ballots.'" ECF No. 1 at ¶ 58 (emphasis added). Those "get-out-the-vote drives" are, in significant part, the work of the DNC. If Plaintiffs succeed in obtaining the relief they seek, the DNC will be forced to dedicate and re-allocate resources—including money and staff time—to effectively reach voters. *See La Union*, 29 F.4th at 307 ("If the district court either partially or fully grants the relief sought by the plaintiffs here, the Committees will have to expend resources to educate their members on the shifting situation in the lead-up to the 2022 election.").

And a decision invalidating NRS 293.269921 would harm Democratic candidates' election prospects. Plaintiffs implicitly acknowledge this lawsuit is simply a gambit to skew the upcoming election in their favor: "Counting mail ballots received after Election Day … specifically and disproportionately harms Republican candidates and voters." ECF No. 1 at ¶ 60. That is why the RNC seeks to void those votes. But any decision of this Court that invalidates ballots cast on or before election day simply because they are received after election day would equally "specifically and disproportionately harm[]" Democratic candidates and voters. A decision in Plaintiffs' favor will impair the DNC's interests in protecting the legal rights of voters and encouraging the election of Democratic candidates.

Again, this case resembles numerous decisions in which a variety of federal courts, including this one, found a political party committee may intervene to prevent restrictions on voting access. *E.g.*, *Paher*, 2020 WL 2042365, at *4 (granting DNC intervention in election law case brought by conservative interest group); *Issa*, 2020 WL 3074351, at *3 (granting Democratic Congressional Campaign Committee and California Democratic Party intervention in lawsuit by Republican congressional candidate); *Donald J. Trump for President, Inc. v. Murphy*, No. 20-cv-10753, 2020 WL 5229209, at *1 (D.N.J. Sept. 1, 2020) (granting Democratic

MOTION TO INTERVENE—13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000

Congressional Campaign Committee intervention in lawsuit by Republican candidate and party entities).

Because the outcome of this litigation may impair the rights of the DNC, as well as those of its members, the DNC satisfies the third prong of the Rule 24(a) test.

### 4.    The DNC's interests are not adequately represented by the existing parties.

"The burden of showing inadequacy of representation is minimal and satisfied if the applicant can demonstrate that representation of its interests may be inadequate." *Citizens for Balanced Use*, 647 F.3d at 898 (internal citations omitted); *see also Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *La Union*, 29 F.4th at 307; *W. Expl.*, 2016 WL 355122, at *3 (intervenor conservation groups' more narrow interests in environmental protections may not be adequately represented by a federal agency defendant's "broader land management interests"). The DNC certainly meets that standard here.

Further, "the government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" *Citizens for Balanced Use*, 647 F.3d at 899 (citation omitted) (allowing environmental group to intervene where it had different objectives than the U.S. Forest Service); *see Berger v. N. Carolina State Conf. of the NAACP*, 597 U.S. 179 (2022) (even when state agents pursue interests "related" to those of political actors, those interests are not properly considered "identical"); *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1255–56 (10th Cir. 2001) ("[T]he government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of a [political candidate] merely because both entities occupy the same posture in the litigation.").

MOTION TO INTERVENE—14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000

Indeed, courts have "often concluded that governmental entities *do not* adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003) (emphasis added); *accord La Union*, 29 F.4th at 309 (The "private interests" of the political committees "are different in kind from the public interests of the State or its officials"); *Citizens for Balanced Use*, 647 F.3d at 899.

While the Secretary of State and various county official defendants may oppose the relief that Plaintiffs seek, they do not share the DNC's particular interest in the votes of *Democratic Party members* and the *election of Democratic candidates*. The Defendants' interests in this litigation are defined by their statutory duties to conduct elections and to administer Nevada's election laws. *See, e.g.*, NRS 293.124(1) ("The Secretary of State shall serve as the Chief Officer of Elections for this State [and] is responsible for the execution and enforcement of the provisions of title 24 of NRS and all other provisions of state and federal law relating to elections in this State."); NRS 293.269925(1) (county clerk responsible for "establish[ing] procedures for the processing and counting of mail ballots"). Indeed, Defendants' stake is defined by their statutory duties, requiring them to "represent the broad public interest." *Great Basin Res. Watch v. U.S. Dep't of the Interior*, Case No. 3:19-cv-00661-LRH-WGC, 2020 WL 1308330, at *3 (D. Nev. Mar. 19, 2020) (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994)).

By contrast, the DNC's interests are much more particular. The DNC's mission is to ensure that as many of its voters who have cast ballots have their votes counted and to have its candidates elected. Plaintiffs' lawsuit threatens significant harm to the DNC's core missions of mobilizing and educating Democratic voters and electing Democratic candidates if NRS 293.269921 is invalidated. *See Issa*, 2020 WL 3074351, at *3 ("While Defendants' arguments turn on their inherent authority as state executives and their responsibility to properly administer

MOTION TO INTERVENE—15

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000

167304893.4

1   election laws, the Proposed Intervenor is concerned with ensuring their party members and the

2   voters they represent have the opportunity to vote in the upcoming federal election, advancing

3   their overall electoral prospects, and allocating their limited resources to inform voters about the

4   election procedures."). Plaintiffs' actions would disenfranchise voters and will harm Democratic

5   candidates. Nothing could be more "germane" to the DNC's purposes. *See La Union*, 29 F.4th at

6   308 (citation omitted).

7          For these reasons, courts have repeatedly permitted political parties to intervene in cases

8   involving election administration, even where government officials are named as defendants—

9   including in Nevada. *See, e.g.*, *Donald J. Trump for President, Inc. v. Cegavske*, No. 2:20-CV-

10  1445 JCM (VCF), 2020 WL 5229116, at *1 (D. Nev. Aug. 21, 2020) (granting intervention as of

11  right because Secretary of State did not adequately represent partisan organization's interests,

12  despite both wishing to defend against suit); *Paher*, 2020 WL 2042365, at *3 (similar, even

13  where intervenors and named defendant "presumably share[d] the goal of protecting the all-mail

14  election provisions . . . being challenged"); *Fair Maps Nevada v. Cegavske*, No. 3:20-CV-00271-

15  MMD-WGC, 2020 WL 8188427, at *3 (D. Nev. May 20, 2020) (similar); *see also, e.g.*, *Hobbs*,

16  2020 WL 6559160, at *1 (allowing parties, including the RNC, to intervene in case brought by

17  the DNC and Arizona Democratic Party); *Issa*, 2020 WL 3074351, at *3.

18         The DNC satisfies this prong too; at the very least, the Defendants may not adequately

19  represent the DNC's interests, and this potential inadequacy is all that is necessary to support

20  intervention.

21         **C.      Alternatively, the DNC should be permitted to intervene under Rule 24(b).**

22         If the Court does not grant intervention as a matter of right, the DNC respectfully

23  requests that the Court exercise its discretion to allow the DNC to intervene under Rule 24(b).

24

25  MOTION TO INTERVENE—16

26  167304893.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000

The DNC easily satisfies the requirements for permissive intervention under Rule 24(b), which grants this Court broad discretion "to allow anyone to intervene who submits a timely motion and 'has a claim or defense that shares with the main action a common question of law or fact.'" *Nevada*, 2019 WL 718825, at *2 (quoting Fed. R. Civ. P. 24(b)(1)(B)). "Because a court has discretion in deciding whether to permit intervention, it should consider whether intervention will cause undue delay or prejudice to the original parties, whether the applicant's interests are adequately represented by the existing parties, and whether judicial economy favors intervention." *Id.* (citing *Venegas v. Skaggs*, 867 F.2d 527, 530–31 (9th Cir. 1989), *aff'd sub nom. Venegas v. Mitchell*, 495 U.S. 82 (1990)); *Paher*, 2020 WL 2042365, at *3 (granting permissive intervention to the DNC and others).

For the reasons discussed above, the DNC's motion is timely. Intervention will result in neither prejudice nor undue delay. The DNC has an undeniable interest in a swift resolution to this action to ensure that Defendants have sufficient time to allow every Nevada voter to cast a ballot in the upcoming presidential election and beyond. Moreover, the DNC has significant interests at stake in this litigation, as outlined above, which would be undermined by the relief Plaintiffs seek and the DNC cannot rely on Defendants to adequately protect its interests. Finally, the DNC also has defenses to Plaintiffs' claims that share common questions of law and fact. Indeed, there is one core "question of law" undergirding the named Defendants' and DNC's positions: the validity of NRS 293.269921. Although each party will undoubtedly approach that question in different ways, informed by their unique interests, this is more than enough to satisfy Rule 24(b).

For the reasons set forth above, permitting the DNC's intervention is consistent with Rule 24 and will permit it to protect its rights and the rights of its members.

MOTION TO INTERVENE—17

167304893.4

**III.     Conclusion**

For the reasons stated above, the DNC respectfully requests the Court grant its motion to intervene as a matter of right under Rule 24(a)(2) or, in the alternative, permit it to intervene under Rule 24(b).

Dated:  May 13, 2024                    PERKINS COIE LLP


By:  *s/ Kevin J. Hamilton*
    Kevin J. Hamilton, WA Bar No. 15648*
    KHamilton@perkinscoie.com
    Heath L. Hyatt, WA Bar No. 54141*
    HHyatt@perkinscoie.com
    Margo S. Jasukaitis, WA Bar No. 57045*
    MJasukaitis@perkinscoie.com
    1201 Third Avenue, Suite 4900
    Seattle, WA 98101-3099
    Telephone: +1.206.359.8000
    Facsimile: +1.206.359.9000

    Daniel H. Stewart
    NV Bar No. 11287
    Brownstein Hyatt Farber Schreck, LLP
    100 North City Parkway, Suite 1600
    Las Vegas, NV 89106
    Telephone: +1.702.464.7018
    dstewart@bhfs.com

*Attorneys for the Democratic National Committee*
**Motion for Admission Pro Hac Vice Pending; Attorney has complied with LR IA 11-2*

MOTION TO INTERVENE—18

167304893.4

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on May 13, 2024, I filed the foregoing **MOTION TO INTERVENE**

3

with the Clerk of the Court for the United States Federal District Court for the District of Nevada

4

by using the CM/ECF system and that the proper parties were served by way of electronic service.

5

/s/ Dominique Hoskins_____
An Employee of Brownstein Hyatt Farber Schreck

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25  MOTION TO INTERVENE—19

26  167304893.4

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000