Jeffrey F. Barr (NV Bar No. 7269)
8275 South Eastern Avenue, Suite 200
Las Vegas, NV 89123
(702) 631-4755
barrj@ashcraftbarr.com

Thomas R. McCarthy* (VA Bar No. 47145)
Conor D. Woodfin* (VA Bar No. 98937)
Thomas S. Vaseliou* (TX Bar No. 24115891)
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
conor@consovoymccarthy.com
tvaseliou@consovoymccarthy.com

Sigal Chattah (NV Bar No. 8264)
5875 S. Rainbow Blvd #204
Las Vegas, NV 89118
(702) 360-6200
sigal@thegoodlawyerlv.com

David A. Warrington* (VA Bar No. 72293)
Gary M. Lawkowski** (VA Bar No. 82329)
2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314
703-574-1206
DWarrington@dhillonlaw.com
GLawkowski@dhillonlaw.com

Michael A. Columbo* (CA Bar No. 271283)
177 Post Street, Suite 700
San Francisco, California 94108
MColumbo@dhillonlaw.com

*admitted pro hac vice
**pro hac vice pending

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

REPUBLICAN NATIONAL COMMITTEE; NEVADA REPUBLICAN PARTY; DONALD J. TRUMP FOR PRESIDENT 2024, INC.; and DONALD J. SZYMANSKI,

Plaintiffs,

v.

CARI-ANN BURGESS, *in her official capacity as the Washoe County Registrar of Voters*; JAN GALASSINI, *in her official capacity as the Washoe County Clerk*; LORENA PORTILLO, *in her official capacity as the Clark County Registrar of Voters*; LYNN MARIE GOYA, *in her official capacity as the Clark County Clerk*; FRANCISCO AGUILAR, *in his official capacity as Nevada Secretary of State*,

Defendants.

No. 3:24-cv-198-MMD-CLB

**RESPONSE IN OPPOSITION TO VET VOICE MOTION TO INTERVENE**

## **INTRODUCTION**

Vet Voice Foundation and the Alliance for Retired Americans do not have a right to litigate this case for the State. Adding more parties serves no purpose other than to complicate the litigation, delay proceedings, inflate expenses, and encumber the parties and the Court with more filings. Vet Voice and the Alliance do not have valid interests that will be impaired by this case—necessary rules such as ballot deadlines neither burden nor disenfranchise anyone. And the State Defendants are well equipped to handle this case. The Court should thus deny the motion. At a minimum, if the Court grants the motion, it should impose reasonable conditions on the intervenors' participation by forbidding them from upsetting the case schedule and requiring them to reduce duplicative briefing.

Opposition to Motion to Intervene

1

# ARGUMENT

**I. Vet Voice and the Alliance do not have a right to intervene.**

To intervene as of right under Rule 24(a)(2), Vet Voice and the Alliance must file a timely motion that shows: (1) they have a significantly protectable interest in this case; (2) disposition of this case may impair their ability to protect that interest; and (3) their interest is not adequately represented by existing parties to the litigation. *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009). They "bear[] the burden of showing that *all* the requirements for intervention have been met." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). "Failure to satisfy any one of the requirements is fatal to the application, and [the court] need not reach the remaining elements if one of the elements is not satisfied." *Perry*, 587 F.3d at 950.

**A. Vet Voice and the Alliance do not have legally protectable interests.**

To satisfy the interest requirement of Rule 24, Vet Voice and the Alliance must show that they have interests relating to this case. An interest is related to the case if "the resolution of the plaintiff's claims actually will affect" the intervenors. *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002) (citation omitted). The interest must be "legally protected" and "significant," and it cannot be "undifferentiated" or "generalized." *Alisal Water*, 370 F.3d at 920. Vet Voice and the Alliance have not satisfied these requirements.

To start, their purported "right" to intervene rests on a false premise: changing the date mail-in ballots are due doesn't burden the right to vote, let alone "disenfranchise[]" anyone. Mot. (Doc. 15) at 2. "Election laws will invariably impose some burden upon individual voters." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). But "late-requesting voters" who wait weeks to submit their ballots at the last minute are

2

Opposition to Motion to Intervene

1  facing a self-imposed burden, not a burden imposed by state law (or court order). *RNC v. DNC*, 589 U.S. 423, 425 (2020). And because Nevada mails out ballots to all registered voters, Nevada voters have one less step to submit a timely ballot. *See* Nev. Rev. Stat. §293.269911. In other words, when "the State offers voters wishing to vote by absentee ballot options to ensure their votes are timely returned, voters who fail to ensure timely return of their ballots should not blame the law for their inability to vote." *DCCC v. Ziriax*, 487 F. Supp. 3d 1207, 1232 (N.D. Okla. 2020) (collecting cases).

District courts have thus denied the Alliance's attempts to intervene in similar election cases, reasoning that interests which merely "turn on some amount of increased risk of future disenfranchisement," do not "constitute a substantial legal interest." *Pub. Int. Legal Found. v. Benson*, No. 1:21-cv-929, 2022 WL 21295936, at *11 (W.D. Mich. Aug. 25, 2022). And the Alliance should know well that a law that "imposes a deadline by which a voter must return his or her absentee ballot" doesn't burden the right to vote, even when it requires ballots to be returned by the closing of polls on election day. *All. for Retired Americans v. Sec'y of State*, 240 A.3d 45, 51, 54, 56 (Me. 2020) (rejecting the Alliance's argument that an election-day deadline imposes a "significant[] burden on the right to vote"). In fact, the Alliance argued in that case that an election-day deadline burdened voters only because of COVID-era conditions. *Id.* at 51. It conceded that "[i]n a normal, non-pandemic year, this deadline might not necessarily impose as significant a burden on the right to vote." *Id.* at 51 n.5.

The asserted right to defend mail-in voting is further undercut by the fact that there's no right to vote by mail. For the bulk of this country's history, States provided nearly all voters with only one method of voting: in person on election day. *Brnovich v. DNC*, 594 U.S. 647, 670 (2021). That history confirms "there is no constitutional right

3
Opposition to Motion to Intervene

to an absentee ballot." *Mays v. LaRose*, 951 F.3d 775, 792 (6th Cir. 2020); *see also Org. for Black Struggle v. Ashcroft*, 978 F.3d 603, 607 (8th Cir. 2020) ("As other courts have stated, 'as long as the state allows voting in person, there is no constitutional right to vote by mail.'" (collecting cases)). Vet Voice and the Alliance claim a right (on behalf of their constituents) to mail ballots at a specific time. "It is thus not the right to vote that is at stake … but a claimed right to receive absentee ballots" and cast them according to personal preferences. *McDonald v. Bd. of Election Comm'rs of Chi.*, 394 U.S. 802, 807 (1969); *see also Tully v. Okeson*, 977 F.3d 608, 611 (7th Cir. 2020) ("[T]he Supreme Court told us that the fundamental right to vote does not extend to a claimed right to cast an absentee ballot….").

Moreover, because in-person and mail-in voting remain fully available, "the right to vote is not 'at stake.'" *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 404 (5th Cir. 2020) (quoting *McDonald*, 394 U.S. at 807). Nevada has also "provided numerous avenues to mitigate chances that voters will be unable to cast their ballots," which means that regulations on absentee voting (such as "Georgia's Election Day deadline") do "not implicate the right to vote at all." *New Ga. Project v. Raffensperger*, 976 F.3d 1278, 1281 (11th Cir. 2020). The proposed intervenors' speculative claims based on non-existent rights do not show interests that are "legally protected" or "significant." *Alisal Water*, 370 F.3d at 920.

As for the organizations' economic interests, Vet Voice and the Alliance don't explain how an election-day deadline "actually will affect" anything they do. *S. Cal. Edison*, 307 F.3d at 803. An "economic interest" must be "non-speculative," "concrete," and "related to the underlying subject matter of the action." *Alisal Water*, 370 F.3d at 919. But their plans for "voter engagement and get-out-the-vote campaigns for 2024,"

4

Opposition to Motion to Intervene

Mot. 15, will apparently occur regardless of whether the Plaintiffs filed this lawsuit. They also don't explain how a deadline change would affect their "plan to devote significant resources to encourage their members and supporters in Nevada to apply for mail ballots, and to assist them in successfully casting those ballots." Mot. 15. Conclusory assertions about "disruption," Mot. 16, "fall[] far short of the 'direct, non-contingent, substantial and legally protectable' interest required for intervention as a matter of right." *S. Cali. Edison*, 307 F.3d at 803 (quoting *Dilks v. Aloha Airlines*, 642 F.2d 1155, 1157 (9th Cir. 1981)).

Because the underlying interests are speculative at best, whatever money they spend in pursuit of those interests is likewise insufficient to support intervention. *See Pub. Int. Legal Found.*, 2022 WL 21295936, at *10 (ruling that an organization's resource diversion failed to satisfy even the Sixth Circuit's "expansive notion of the interest sufficient to invoke intervention of right"). And "[w]here no protectable interest is present, there can be no impairment of the ability to protect it." *Am. Ass'n of People with Disabilities v. Herrera*, 257 F.R.D. 236, 252 (D.N.M. 2008); *see also Sierra Club v. EPA*, 995 F.2d 1478, 1486 (9th Cir. 1993) (holding that the "third element of intervention as of right, impairment," generally "follows from" the second element).

### B. There is no evidence—let alone a "very compelling showing"—that the State's representation will be inadequate.

On the final element for intervention as of right, Vet Voice and the Alliance misstate the applicable standard. And that explains why they rely on district court cases and treatises rather than Ninth Circuit precedent. *See* Mot. 17-19. Ordinarily, "the requirement of inadequacy of representation" requires only a "minimal" showing that the "representation of [the intervenors'] interests 'may be' inadequate." *Citizens for*

5

Opposition to Motion to Intervene

*Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011). But "[w]here the party and the proposed intervenor share the same 'ultimate objective,' a presumption of adequacy of representation applies, and the intervenor can rebut that presumption only with a 'compelling showing' to the contrary." *Perry*, 587 F.3d at 951 (citations omitted). There's also a separate "assumption of adequacy when the government is acting on behalf of a constituency that it represents," which must be rebutted with a "*very* compelling showing." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (emphasis added). Vet Voice and the Alliance have not made a "very compelling showing" that the State's representation will be inadequate.

To start, Vet Voice and the Alliance have not shown that they share a different "ultimate objective" from the State defendants. *Perry*, 587 F.3d at 951. They concede that "the Secretary of State and various county official defendants may oppose relief." Mot. 17. But they claim that is "immaterial" because the State might not be as concerned as they are about "protecting" the right "to vote." Mot. 18. They provide no evidence that the State is unconcerned about protecting the right to vote. And even if they did, that's not what "ultimate objective" means—the question is simply whether they seek the same relief as the State. *See Arizonans for Fair Elections v. Hobbs*, 335 F.R.D. 269, 275 (D. Ariz. 2020) (intervenors shared the same "ultimate objective" as the State when both were "defending the constitutionality" of state laws); *Perry*, 587 F.3d at 951 (same). The defendants have not yet appeared, but there is no reason to doubt that they will not seek dismissal of the case, as Vet Voice and the Alliance all but admit. That they share the same ultimate objective is far from "immaterial." Mot. 17. It triggers the presumption of adequate representation. *Perry*, 587 F.3d at 951. Even if it didn't, a separate "assumption of adequacy" is present because the State Defendants are "acting on behalf

6
Opposition to Motion to Intervene

of a constituency that [they] represent[]." *Arakaki*, 324 F.3d at 1086. The presumption applies.

Vet Voice and the Alliance fall far short of a "very compelling showing" that the State's representation will be inadequate. After all, the State *represents* the interests of voters. The Secretary is an elected official who serves as "the Chief Officer of Elections" for Nevada. Nev. Rev. Stat. §293.124. Vet Voice and the Alliance claim that "partisan or private actors" often have interests that diverge from the government. Mot. 18. But the partisan interests of Vet Voice, the Alliance, and the Democratic Secretary of State are aligned in this case. Even if they weren't, the "Proposed Intervenors must do more than allege—and superficially at that—partisan bias to meet it." *Miracle v. Hobbs*, 333 F.R.D. 151, 156 (D. Ariz. 2019). "Proposed Intervenors demonstrate no such deficiencies in the present case; indeed, they cannot," because the Secretary will defend this case and adequately represent the intervenors' interests. *Id.* at 155.

The cases finding inadequate representation only prove that Vet Voice and the Alliance come up short here. Courts have recognized a compelling showing of inadequate representation when the State "fail[s] to appeal the court's judgment," and "intervention [is] vital to the defense of the law at issue." *Id.* (citing *Horne v. Flores*, 557 U.S. 433, 443 (2009)). Similarly, when the government "seeks to overturn on appeal the very court decision" that protects the intervenors' interests, intervenors can show inadequate representation. *Citizens for Balanced Use*, 647 F.3d at 899. The State Defendants are not employing such tactics here.

The three "election cases" that Vet Voice and the Alliance cite only provide additional reasons to deny their motion. Mot. 18. In one case, intervention was unopposed, and the court granted the motion "[w]ithout opining on the merits" of the

7
Opposition to Motion to Intervene

1   intervention itself. *Donald J. Trump for President, Inc. v. Cegavske*, No. 2:20-cv-1445, 2020
2   WL 5229116, at *1 (D. Nev. Aug. 21, 2020). That was also true of the election-day case
3   in Mississippi. *See* Docket Order Granting Vet Voice Foundation and Mississippi
4   Alliance for Retired Americans' Motion to Intervene as Unopposed, No. 1:24-cv-25,
5   *RNC v. Wetzel* (Mar. 4, 2024). The *opposed* motions to intervene in that case were denied.
6   *See id.*, Doc. 47. The other two cases relied on the fact that the State's brief "reveal[ed]
7   divergent arguments" compared to the intervenors' brief. *Paher v. Cegavske*, No. 3:20-cv-
8   243, 2020 WL 2042365, at *3 (D. Nev. Apr. 28, 2020); *see also Fair Maps Nev. v. Cegavske*,
9   No. 3:20-cv-271, 2020 WL 8188427, at *3 (D. Nev. May 20, 2020) ("Intervenors' brief
10  presents a threshold standing argument that is not clearly raised in Defendants' brief.").
11  But Vet Voice and the Alliance identify no arguments they intend to make that the State
12  Defendants would be unwilling to raise.

13      To the extent Vet Voice and the Alliance argue that it is too early in the case to
14  evaluate the State Defendants' positions, that's just evidence that they filed their motion
15  with no regard for—and no evidence of—the State Defendants' representation. Vet
16  Voice and the Alliance should have waited to see whether the existing parties would
17  adequately represent their interests before jumping into this case. That would not have
18  prejudiced their motion, since "the crucial date for assessing the timeliness of a motion
19  to intervene is when proposed intervenors should have been aware that their interests
20  would not be adequately protected by the existing parties." *W. Watersheds Project v.*
21  *Haaland*, 22 F.4th 828, 836 (9th Cir. 2022) Alternatively, they could have filed a
22  conditional motion to intervene as early as they did, in case "at some future point in this
23  litigation the government's representation of their interest [turned] inadequate." *Solid*
24  *Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 508 (7th Cir.

8
Opposition to Motion to Intervene

1996). They did neither. Instead, Vet Voice and the Alliance moved to intervene with no evidence that the State's representation will be inadequate.

In the end, Vet Voice and the Alliance claim nothing but potential conflict from interests that are not "identical." Mot. 18. Those unsupported claims do not make a "very compelling showing" that the State defendants' representation is inadequate. *Arakaki*, 324 F.3d at 1086.

## II. Permissive intervention would serve no benefit to the parties or the Court and would delay proceedings.

Adding more parties would unnecessarily prolong litigation, burden the parties, duplicate arguments, and add expense, with no benefit to the parties or the Court. To obtain permissive intervention under Rule 24(b), intervenors must file a timely motion that shows: (1) independent grounds for jurisdiction; and (2) that their claims share a question of law or fact with the main action. *S. Cal. Edison*, 307 F.3d at 803-04. Even if those elements are satisfied, "the district court retains discretion to deny permissive intervention." *Id.* In exercising that discretion, the court "must consider whether intervention will unduly delay or prejudice the original parties and should consider whether the applicant's interests are adequately represented by the existing parties and whether judicial economy favors intervention." *Miracle*, 333 F.R.D. at 156. Even if Vet Voice and the Alliance met the jurisdictional requirement, additional considerations weigh against permissive intervention.

***First***, the State Defendants adequately represent their interests. This is an independent reason to deny permissive intervention. The "[i]ntervenors' interests are aligned with those of Defendant[s]," who are "well-suited to defend" the claims in this case. *Miracle*, 333 F.R.D. at 156 (denying permissive intervention based on adequate

9

Opposition to Motion to Intervene

representation); *see also United States ex rel. Richards v. De Leon Guerrero*, 4 F.3d 749, 756 (9th Cir. 1993) (denying permissive intervention to taxpayers where the governor adequately represented their interests). The existing parties are "capable of developing a complete factual record," *Perry*, 587 F.3d at 955-56, and the proposed intervenors' "participation is unnecessary to the full development of this case," *Arizonans for Fair Elections*, 335 F.R.D. at 276. As in other election cases, the "[i]ntervenors' interests align with the State's," and they have not shown that they "can more adequately defend state laws than the State itself." *Id.*

**Second**, Vet Voice and the Alliance's participation will delay proceedings and prejudice the parties. Because "[i]ntervening parties are entitled to all the rights and responsibilities of original parties to litigation," adding the intervenors will increase the costs of litigation, make scheduling more cumbersome, and inevitably slow down proceedings. *Am. Ass'n of People with Disabilities*, 257 F.R.D. at 259; *see also Perry*, 587 F.3d at 955-56 (upholding the district court's determination that intervention "might very well delay the proceedings, as each group would need to conduct discovery on substantially similar issues," which "in all probability would consume additional time and resources of both the Court and the parties"). Even minor delays are especially problematic in "time sensitive" election cases such as this one, where "the general election is fast approaching." *Am. Ass'n of People with Disabilities*, 257 F.R.D. at 259. Because "timely resolution is critical to the integrity of the election process, both its perceived and actual integrity," the Court should deny permissive intervention. *Pub. Int. Legal Found.*, 2022 WL 21295936, at *12.

**Third**, Vet Voice and the Alliance have not pointed to any unique arguments or positions they would take up that the State defendants will not. They have provided the

10

Opposition to Motion to Intervene

Court with no reasons to believe their participation would help the Court resolve the issues in this case. Any doubt on that score weighs in favor of permitting them to participate as amici, not as parties. *See Miracle*, 333 F.R.D. at 156-57 ("Although the Court will not allow intervention, the Court grants Proposed Intervenors leave to file an amicus brief….").

Adding more parties will delay this case, prejudice the parties, and produce no benefits. Vet Voice and the Alliance have not committed to reduce duplicative briefing, or even identified different arguments they intend to raise. And they have "presented no creditable argument that [their] status as an intervenor-defendant would in any way reshape the issues in this case or contribute to its just resolution." *Resol. Tr. Corp. v. City of Bos.*, 150 F.R.D. 449, 455 (D. Mass. 1993).

## **CONCLUSION**

The Court should deny the motion to intervene.

| | | |
|---|---|---|
| 1 | Dated: May 24, 2024 | Respectfully submitted, |
| 2 | Thomas R. McCarthy* | /s/ Jeffrey F. Barr |
| 3 |    VA Bar No. 47145 | |
| | Conor D. Woodfin* | Jeffrey F. Barr (NV Bar No. 7269) |
| 4 |    VA Bar No. 98937 | ASHCRAFT & BARR LLP |
| | Thomas S. Vaseliou* | 8275 South Eastern Ave., Suite 200 |
| 5 |    TX Bar No. 24115891 | Las Vegas, NV 89123 |
| | CONSOVOY MCCARTHY PLLC | (702) 631-4755 |
| 6 | 1600 Wilson Boulevard, Suite 700 | barrj@ashcraftbarr.com |
| 7 | Arlington, VA 22209 | |
| | (703) 243-9423 | *Counsel for the RNC, Donald J. Trump* |
| 8 | tom@consovoymccarthy.com | *for President 2024, Inc., and Donald J.* |
| | conor@consovoymccarthy.com | *Szymanski* |
| 9 | tvaseliou@consovoymccarthy.com | |
| | | /s/ Sigal Chattah |
| 10 | *Counsel for Plaintiffs* | |
| | | Sigal Chattah (NV Bar No. 8264) |
| 11 | | CHATTAH LAW GROUP |
| 12 | David A. Warrington* | 5875 S. Rainbow Blvd #204 |
| |    VA Bar No. 72293 | Las Vegas, NV 89118 |
| 13 | Gary M. Lawkowski** | (702) 360-6200 |
| |    VA Bar No. 82329 | sigal@thegoodlawyerlv.com |
| 14 | DHILLON LAW GROUP, INC. | |
| | 2121 Eisenhower Avenue, Suite 608 | *Counsel for the Nevada Republican Party* |
| 15 | Alexandria, VA 22314 | |
| 16 | 703-574-1206 | |
| | DWarrington@dhillonlaw.com | |
| 17 | GLawkowski@dhillonlaw.com | |
| 18 | Michael A. Columbo* | |
| |    CA Bar No. 271283 | |
| 19 | DHILLON LAW GROUP, INC. | |
| | 177 Post Street, Suite 700 | |
| 20 | San Francisco, California 94108 | |
| 21 | MColumbo@dhillonlaw.com | |
| 22 | *Counsel for Donald J. Trump for President 2024, Inc.* | |
| 23 | | |
| 24 | *admitted pro hac vice | |
| | **pro hac vice pending | |
| 25 | | 12 |
| | Opposition to Motion to Intervene | |

Opposition to Motion to Intervene