UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE, *et al.*,<br><br>Plaintiffs,<br>v.<br>CARI-ANN BURGESS, *et al.*,<br><br>Defendants. | Case No. 3:24-cv-00198-MMD-CLB<br><br>ORDER |

**I.   SUMMARY**

Individuals and organizations interested in protecting the ability of Republic voters to cast votes and in electing Republican candidates to public office[1] (collectively, "Plaintiffs") have brought suit to challenge Nevada's mail ballot receipt deadline as unconstitutional and in violation of federal law. (ECF No. 1 ("Complaint").) Pending before the Court is a motion to intervene as defendants filed by the Vet Voice Foundation and the Nevada Alliance for Retired Americans ("NARA") (collectively, "Petitioners"). (ECF No. 15 ("Motion").) The Court has reviewed the parties' responses and replies (ECF Nos. 55, 64) and finds that intervention as of right is not warranted; however, the Court will grant permissive intervention.

**II.   RELEVANT BACKGROUND**

On May 3, 2024, Plaintiffs filed this action challenging the mail ballot receipt deadline in Nevada. (ECF No. 1.) Nevada law generally requires that ballots be

---

[1]Plaintiffs are the Republican National Committee; the Nevada Republican Party; Donald J. Trump for President 2024, Inc.; and Donald Szymanski. They are suing in their official capacities Washoe County Registrar of Voters Cari-Ann Burgess, Washoe County Clerk Jan Galassini, Clark County Registrar of Voters Lorena Portillo, Clark County Clerk Lynn Marie Goya, and Nevada Secretary of State Francisco Aguilar (collectively, "Government Defendants"). The Democratic National Committee is an intervenor-defendant. (ECF No. 56.)

postmarked on or before the federal Election Day but allows for ballots to be received by county clerks' offices up to four days after Election Day. (*Id.* at 8-9.) Plaintiffs contend that, in allowing ballots to be received after the federally designated date, the Nevada mail ballot receipt deadline is in violation of the Constitution and federal law. (*Id.* at 14-16.)

Vet Voice and NARA filed their Motion on May 10, 2024, seeking to intervene in this action as defendants. (ECF No. 15.) Plaintiffs oppose the Motion (ECF No. 55), and Defendants have not submitted a response.

### III. DISCUSSION

Petitioners seek intervention under Federal Rule of Civil Procedure 24(a) as of right or, alternatively, permissive intervention under Rule 24(b).

#### A. Intervention as of Right

Applicants for intervention as of right under Rule 24(a)(2) must meet four requirements:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (en banc). Courts assessing whether intervention as of right is appropriate "interpret these requirements broadly in favor of intervention" and are "guided primarily by practical considerations, not technical distinctions." *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022) (quotation marks omitted).

Plaintiffs maintain that Petitioners have failed to demonstrate the second, third, and

fourth elements of the test.[2] The Court will address each of the three latter elements in turn.

### 1. Significantly Protectable Interests

Petitioners must next establish that they have significantly protectable interests in the subject of this litigation. At minimum, "Rule 24(a)(2) requires that the asserted interest be protectable under some law and that there exist a relationship between the legally protected interest and the claims at issue." *Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1088 (9th Cir. 2022) (quotation marks omitted). Determining whether Petitioners have a sufficient interest in an action is a "practical, threshold inquiry," and they need not establish a "specific legal or equitable interest." *Citizens for Balanced Use*, 647 F.3d at 897 (quotation marks omitted).

Petitioners first raise associational interests on behalf of their thousands of members and constituents who vote by mail in Nevada and whose votes consequently might not be counted if the four-day grace period is taken away. (ECF No. 15 at 13-16.) The communities that Petitioners serve—retirees, veterans, and servicemembers— "heavily" rely on mail ballots to vote due to old age, disability, and being stationed overseas. (*Id.* at 8, 10, 14-15.) As a result, they are especially likely to be affected by a shortened mail ballot receipt period, and it is probable, rather than speculative, that some of their votes will not be counted if Plaintiffs prevail. *Cf. Pub. Int. Legal Found. v. Benson*, No. 1:21-CV-929, 2022 WL 21295936, at *11 (W.D. Mich. Aug. 25, 2022) (interest in challenging a law removing names from voter registry was too "speculative" where proposed intervenors had no members on the list of names being removed). Petitioners' interest in ensuring that their members' and constituents' votes are counted is sufficient to satisfy the second element. *See Bost v. Ill. State Bd. of Elections*, 75 F.4th 682, 687 (7th

---

[2] Plaintiffs essentially conceded that the Motion is timely. Indeed, Petitioners moved for intervention within seven days of the filing of the Complaint and before the parties filed any motions or the Court entered a scheduling order. (ECF Nos. 1, 15.) The Motion thus has the "traditional features of a timely motion." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011); *see also Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020).

Cir. 2023); *Mi Familia Vota v. Fontes*, __ F. Supp. 3d __, No. CV-22-00509-PHX-SRB, 2024 WL 862406, at *31 (D. Ariz. Feb. 29, 2024) (organizations had representational standing where members faced "realistic danger" of losing the right to vote).[3]

Petitioners further argue that, if Nevada's mail ballot receipt deadline is invalidated, they will need to allocate resources toward educating their Nevadan members and constituents on the new deadline and assisting them with casting mailed ballots. (ECF No. 15 at 16-18.) This economic interest is sufficiently "concrete and related to the underlying subject matter of the action" to support intervention. *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). Voter turnout among members and constituents is central to the missions of both Vet Voice and NARA, and the organizations dedicate "significant resources" to encouraging their communities to vote. (ECF No. 15 at 7-10.) Both are already preparing mail ballot assistance plans for the 2024 election in Nevada. (*Id.* at 16.) The link between an earlier mail ballot receipt deadline and Petitioners' financial interests is thus clear and direct. *Cf. Alisal Water*, 370 F.3d at 920 (interest in how an award of penalties would affect a potential intervenor as a creditor was "several degrees removed" from the issues being litigated); *E. Bay Sanctuary Covenant v. Biden*, __ F.4th __, No. 23-16032, 2024 WL 2309476, at *4 (9th Cir. May 22, 2024) (impacts of immigration law on state expenditures and population-based political representation were "incidental effects" not at issue in the suit and could not support states' intervention). In line with what other courts have "routinely" found, the Court holds that Petitioners, as organizations that seek to increase voter turnout among their constituents, have significant protectable interests in diverting their limited resources toward educating members about additional barriers to casting a ballot in Nevada. *Issa v. Newsom*, No. 2:20-CV-01044-MCE-CKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020); *see also E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 663 (9th Cir. 2021) (organization had direct standing where the conduct at issue "frustrated its mission and caused it to divert resources in response to

---

[3] "Article III standing requirements are more stringent than those for intervention under rule 24(a)." *Yniguez v. Arizona*, 939 F.2d 727, 735 (9th Cir. 1991).

that frustration of purpose").[4]

Contrary to Plaintiffs' assertions, neither of these interests in Nevada's mail ballot receipt deadline is "undifferentiated" or "generalized." (ECF No. 55 at 3 (quoting *Alisal Water*, 370 F.3d at 920).) This is not an instance where an organization generally asserts interests in the integrity of the election process common to all members of the public. *Cf. Am. Ass'n of People With Disabilities v. Herrera*, 257 F.R.D. 236, 258 (D.N.M. 2008); *Liebert*, 345 F.R.D. at 173. Nor would allowing Petitioners to intervene "create an open invitation" for virtually any organization with members in Nevada to intervene in lawsuits where voting may become more difficult. *Alisal Water*, 370 F.3d at 920. Again, if Plaintiffs prevail, both organizations will reallocate their resources toward efforts to educate Nevada voters about the new deadline, and both serve communities which would be substantially more impacted than the average population if Plaintiffs prevail. (ECF No. 15 at 8-18.) Petitioners thus possess particularized interests in the Nevada mail ballot receipt deadline.

Petitioners have significantly protectable interests in the subject of this litigation.

### 2. Impairment of Interests

The nature of Petitioners' interests makes the potential impairment of them clear. There is little question that changing Nevada's mail ballot receipt deadline would substantially affect Petitioners and their members in a "practical sense" if, as a direct result of the change, they have to reallocate their limited resources, or their members are unable to vote. *Citizens for Balanced Use*, 647 F.3d at 898 (citing FED. R. CIV. PROC. 24 advisory committee's note to 1966 amendment); *see also La Union del Pueblo Entero*, 29 F.4th at

---

[4]*See e.g.*, *Bost*, 75 F.4th at 687; *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305-06 (5th Cir. 2022) (finding interest under lower burden "for a public interest group raising a public interest question"); *Republican Nat'l Comm. v. Wetzel*, No. 1:24-CV-25-LG-RPM, 2024 WL 988383, at *3 (S.D. Miss. Mar. 7, 2024) (also under Fifth Circuit standard); *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014) ("[O]rganizations can establish standing to challenge election laws by showing that they will have to divert personnel and time to educating potential voters on compliance with the laws and assisting voters who might be left off the registration rolls on Election Day."); *cf. Liebert v. Wisc. Elections Comm'n*, 345 F.R.D. 169, 173 (W.D. Wisc. 2023) (potential intervenor-defendants had no significant interest in educating constituents where plaintiffs sought to eliminate, rather than add, restrictions on voting).

307. Petitioners have met their burden for the third element of Rule 24(a).

### 3. Inadequacy of Representation by Existing Parties

Petitioners must finally establish that existing parties will not adequately represent their interests. The "minimal" burden of showing inadequate representation is generally satisfied if an applicant can demonstrate that representation of its interests "may be" inadequate. *See Citizens for Balanced Use*, 647 F.3d at 898 (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003), *as amended* (May 13, 2003)). However, courts employ a rebuttable presumption of adequate representation where the proposed intervenor shares the same "ultimate objective" as a current party or "when the government is acting on behalf of a constituency that it represents." *Id.* If both conditions are present—that is, a proposed intervenor shares interests with a governmental party acting on behalf of the public—then a proposed intervenor must make a "very compelling showing" of inadequate representation to rebut this presumption. *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603, 620 (9th Cir. 2020); *accord Arakaki*, 324 F.3d at 1086.

Petitioners and the Government Defendants appear to possess the same "ultimate objective" of upholding the Nevada mail ballot receipt deadline. *W. Watersheds Project*, 22 F.4th at 841. A shared interest in upholding a law typically suffices to establish a shared objective. *See, e.g., id.; Oakland Bulk*, 960 F.3d at 620. There are instances where "the government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group" even when "'both entities occupy the same posture in the litigation.'" *Citizens for Balanced Use*, 647 F.3d at 899 (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009)). That is not the case here, as nothing in the record leads the Court to doubt that the Government Defendants intend to uphold the mail ballot receipt deadline. *See Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011); *cf. Citizens for Balanced Use*, 647 F.3d at 899 (intervenors and the government did not have "identical" objectives where the government was defending a law "reluctantly").

A "very compelling showing" of inadequate representation is therefore required to rebut the presumption of adequate representation. *Oakland Bulk,* 960 F.3d at 620 (9th Cir. 2020). Petitioners argue that their interest in this suit—protecting their constituents' voting rights—is narrower than that of the Government Defendants, who must defend Nevada voting laws without regard for their effects. (ECF No. 15 at 19.) "But this alone is insufficient." *Oakland Bulk*, 960 F.3d at 620. To make a compelling showing of inadequate representation, Petitioners must offer "*persuasive evidence*" that the Government Defendants' broader interests will likely cause them "to stake out an undesirable legal position," *id.* (emphasis added), such as by failing to advance potentially meritorious arguments, *see California ex rel. Lockyer v. United States*, 450 F.3d 436, 444 (9th Cir. 2006); *W. Watersheds Project*, 22 F.4th at 841. Petitioners have instead provided nothing more than generalized "speculation" as to the purported inadequacy of representation. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1307 (9th Cir. 1997). In the absence of a very compelling showing to the contrary, the presumption of adequate representation remains intact.[5]

Petitioners' failure to demonstrate sufficiently that Defendants will inadequately represent their interests is "fatal" to their application for intervention as of right. *Geithner*, 644 F.3d at 841. The Motion is denied as to intervention under Rule 24(a).

**B.   Permissive Intervention**

Though intervention as of right is not warranted here, Petitioners have demonstrated that they meet the requirements of permissive intervention. "Resolution of

---

[5]The Supreme Court's recent decision in *Berger v. North Carolina State Conference of NAACP* does not alter this conclusion. *See* 597 U.S. 179 (2022). There, the Supreme Court found that a similar presumption of adequate representation cannot apply where other duly authorized representatives of a state seek intervention. *Id.* at 200. The Court discussed presumptions of adequate representation in other scenarios—like the one at issue here—in reaching that decision but ultimately did not rule on their merits. *See id.* at 197 ("[W]e need not decide whether a presumption of adequate representation might sometimes be appropriate when a private litigant seeks to defend a law alongside the government."). *Berger* therefore does not disturb the extensive Ninth Circuit authority endorsing this presumption. *See Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012).

a motion for permissive intervention is committed to the discretion of the court before which intervention is sought." *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 278-79 (2022). Under Rule 24(b), the Court may allow anyone to intervene who submits a timely motion and "has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. PROC. 24(b).[6] The Court, in assessing applications for permissive intervention, must also "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.* at (b)(3).

Both threshold requirements have been met. There is no question that the Motion is timely, and it appears that Petitioners will assert "similar defenses in support of" the Nevada mail ballot receipt deadline, such that they will share common questions of law and fact with the main action. (ECF No. 15-3.) *Paher*, 2020 WL 2042365, at *3.

Intervention will not result in undue delay or prejudice to the existing parties, contrary to Plaintiffs' contention. Though this case is essentially on an expedited timeline due to the impending November 2024 election, the Court is confident in its ability to address any disputes going to preliminary relief or dispositive motions to allow sufficient time for the parties to appeal its rulings, even with two additional defendants. Petitioners' Motion was filed within a week of the Complaint and before any other motions had been filed in this action. They have committed themselves "to be bound by any case schedule" and have emphasized their own interests in the "expeditious resolution of this case." (ECF No. 64 at 10.) Moreover, Plaintiffs raise only questions of law, rather than questions of fact whose resolution would require additional, time-consuming discovery if additional defendants were added. *Cf. Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 955-56 (9th Cir. 2009). These circumstances indicate that including Petitioners as parties to this action will not result in undue delay. As Plaintiffs' arguments as to prejudice are founded on undue delay and no undue delay is expected, the Court finds that the parties will not

---

[6]Potential intervenors generally must also show that "the court has an independent basis for jurisdiction." *Donnelly v Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). This finding is unnecessary where, as here, the proposed intervenors raise no new claims. (ECF No. 15-3 (proposed answer).) *See Geithner*, 644 F.3d at 844.

be prejudiced by Petitioners' intervention. (ECF No. 55 at 11.)

Petitioners have satisfied the requirements for permissive intervention under Rule 24(b). The Court accordingly grants permissive intervention.

### IV. CONCLUSION

The Court notes that the parties made several arguments and cited several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motion before the Court.

It is therefore ordered that Vet Voice and NARA's motion to intervene (ECF No. 15) is granted.

DATED THIS 6th day of June 2024.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE