Kevin J. Hamilton, WA Bar No. 15648*
Heath L. Hyatt, WA Bar No. 54141*
Margo S. Jasukaitis, WA Bar No. 57045*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone:   206.359.8000
KHamilton@perkinscoie.com
HHyatt@perkinscoie.com
MJasukaitis@perkinscoie.com

Devon T. Reese, NV Bar No. 7496
Nathan R. Ring, NV Bar No. 12078
Alex Velto, NV Bar No. 14961
REESE RING VELTO, PLLC
200 S. Virginia Street, Suite 655
Reno, Nevada 89501
Telephone:   775.446.8096
devon@rrvlawyers.com
nathan@rrvlawyers.com
alex@rrvlawyers.com

*Attorneys for the Democratic National Committee*
\* Admitted to practice in this case under LR IA 11-2

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE; NEVADA REPUBLICAN PARTY; DONALD J. TRUMP FOR PRESIDENT 2024, INC.; and DONALD J. SZYMANSKI,<br><br>Plaintiffs,<br><br>v.<br><br>CARI-ANN BURGESS, in her official capacity as the Washoe County Registrar of Voters; JAN GALASSINI, in her official capacity as the Washoe County Clerk; LORENA PORTILLO, in her official capacity as the Clark County Registrar of Voters; LYNN MARIE GOYA, in her official capacity as the Clark County Clerk; FRANCISCO AGUILAR, in his official capacity as Nevada Secretary of State,<br><br>Defendants. | Case No. 3:24-cv-00198-MMD-CLB<br><br>**INTERVENOR-DEFENDANT THE DNC'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |

INTERVENOR-DEFENDANT
THE DNC'S REPLY ISO
MOTION TO DISMISS

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

## I. INTRODUCTION

Plaintiffs' Oppositions to the Motions to Dismiss make clear that their claims should be dismissed. The statutory text, legislative history, and long-standing practice of many states prove that all federal law requires for an "election" to take place on "election day" is for voters to make their final choice and then properly submit their ballot by that day, whether by U.S. mail, drop box, or leaving it directly with election officials. That is the only sensible reading of the Federal Election Day Statutes, as numerous states, and *every court* to have confronted the issue, have easily concluded.

Against this backdrop, Plaintiffs offer precious little to support their claims. Finding no support in the text of the statute, its legislative history, or the public policy it is designed to advance, Plaintiffs instead largely rely on a single quote from an obviously distinguishable Supreme Court case and a self-serving redefinition of "casting" a ballot. On this thin reed, Plaintiffs seek to overturn state law, which would almost certainly have the effect of invalidating thousands—or potentially tens of thousands—of ballots cast by fully qualified voters, all in service of an avowedly partisan goal. *See Voting Integrity Project, Inc. v. Bomer*, 199 F.3d 773, 777 (5th Cir. 2000) ("[W]e cannot conceive that Congress intended the federal election day statutes to have the effect of impeding citizens in exercising their right to vote. The legislative history of the statutes reflects Congress's concern that citizens be able to exercise their right to vote."). This falls woefully short of the mark. Plaintiffs' claims fail as a matter of law.

## II. ARGUMENT

Every federal court that has considered Plaintiffs' claim that a ballot must be received by election officials on or before election day has emphatically rejected it. *See Bost v. Ill. State Bd. of Elections*, 684 F. Supp. 3d 720, 736 (N.D. Ill. 2023) (ballot receipt statute allowing ballots to be

INTERVENOR-DEFENDANT THE DNC'S REPLY ISO MOTION TO DISMISS – 1

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

received and counted for fourteen days after election day "operates harmoniously with the federal statutes that set the timing for federal elections"); *Donald J. Trump for President, Inc. v. Way*, 492 F. Supp. 3d 354, 368, 372 (D.N.J. 2020) ("the Federal Election Day Statutes are silent on methods of determining the timeliness of ballots"); *cf. Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 368 n.23 (Pa. 2020) ("[A]llowing the tabulation of ballots received after Election Day does not undermine the existence of a federal Election Day.").[1]

That's hardly a surprise. Plaintiffs' interpretation of the Federal Election Day Statutes is inconsistent with the statutes' text, their legislative history, federal case law, public policy, and the practical reality of election administration, all of which confirm that the essence of an "election" is the voter's *choice* of candidates. *See* the DNC's Mot. to Dismiss at 6–9 (May 30, 2024), ECF No. 59 ("ECF No. 59"). And in the context of absentee ballots, that choice occurs when a voter properly submits their ballot—whether by mailing the ballot, placing it in a ballot drop box, or leaving it directly with election officials. *Id.*

Intervenor-Defendant the DNC submits that Plaintiffs' Complaint should be dismissed.

### A. The Ballot Receipt Deadline is consistent with the text and the purpose of the Federal Election Day Statutes.

Plaintiffs claim that "[b]y effectively extending Nevada's federal election past election day, Nevada violates federal law mandating that elections take place on the uniform, national 'day for the election.'" Resp. to Secretary's Mot. to Dismiss at 1 (June 13, 2024), ECF No. 74 ("ECF No. 74"). But Plaintiffs find no support for their theory in either the plain text of the Federal Election Day Statutes or the legislature's intent in passing them.

---

[1] Motions for Summary Judgment in *RNC v. Wetzel*, No. 1:24cv25 LG-RPM (S.D. Miss.), are still pending as of the filing of this reply.

INTERVENOR-DEFENDANT THE
DNC'S REPLY ISO MOTION TO
DISMISS – 2

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

The Federal Election Day Statutes simply set the date for when an "election" must occur. The statutes do not say anything about the details of the election (in-person, early voting, or all mail) or when election officials must *receive* ballots to be counted. *See* ECF No. 59 at 10. Those issues are left to the various states, subject only to congressional authority to "make or alter such regulations." U.S. Const. art. I, § 4. Nevada's Ballot Receipt Deadline creates a mailbox rule that allows a voter to cast a ballot by mailing it on or before election day and requires receipt of the ballot within four days of the election. NRS 293.269921. Other states have adopted different rules: some require receipt by election day, Minn. Stat. § 203B.08(3), while others allow receipt for longer periods, Cal. Elec. Code § 3020(b). This is precisely what the Framers intended.

Nevada's Ballot Receipt Deadline ensures that voters choose their candidates and submit their ballots no later than election day. Once the voter mails the ballot (or puts it in a drop box or delivers it to election officials), that voter's choice is *final*. ECF No. 59 at 11. So, federal law and Nevada's Ballot Receipt Deadline "operate harmoniously." *Gonzalez v. Arizona*, 677 F.3d 383, 394 (9th Cir. 2012), *aff'd sub nom. Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013).

Without really saying why, Plaintiffs contend that the Ballot Receipt Deadline undermines Congress's intent. *See* Resp. to the DNC's Mot. to Dismiss at 9 (June 13, 2024), ECF No. 73 ("ECF No. 73"). But it plainly doesn't. Congress enacted the Federal Election Day Statutes to prevent (1) "distortion of the voting process threatened when the results of an early federal election in one State can influence later voting in other States" and (2) the "burden on citizens forced to turn out on two different election days to make final selections of federal officers in Presidential election years." *Foster v. Love*, 522 U.S. 67, 73–74 (1997) (citing the remarks of Representative Butler, the sponsor of the original bill that ultimately became 2 U.S.C. § 7 found in Cong. Globe,

INTERVENOR-DEFENDANT THE DNC'S REPLY ISO MOTION TO DISMISS – 3

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

42d Cong., 2d Sess. 141 (1871)). Nothing about Nevada's Ballot Receipt Deadline even remotely undermines those purposes.

Once a Nevada voter submits their ballot—whether by mail, to a drop box, or in person—the ballot has been cast. Voters do not get to change their vote while it is in the mail or is sitting in a ballot drop box, and they certainly cannot be influenced by results from elsewhere.[2]

Plaintiffs claim that their theory helps "avoid the chaos and suspicions of impropriety that can ensue if thousands of absentee ballots flow in after election day and potentially flip the results of an election." *Id.* (quoting *DNC v. Wis. State Legislature*, 141 S. Ct. 28, 33 (2020) (Kavanaugh, J., concurring)). This hardly helps their argument. For starters, voters' *misunderstanding* of Nevada law or election administration is hardly a justification for overturning the Ballot Receipt Deadline. After all, those "thousands of absentee ballots [flowing] in after election day" still had to be *cast on or before election day*. But more importantly, the details of the time, place, and manner of the election are constitutionally assigned to Nevada. U.S. Const. art. I, § 4. Plaintiffs' preference for a different set of rules is irrelevant.

**B.     Plaintiffs' attempt to manufacture a conflict with federal law fails.**

The only purported "conflict" that Plaintiffs raise between the Federal Election Day Statutes and Nevada law—and the heart of their argument—is their belief that "'[t]he day for the election' means the final day ballots are received by election officials." ECF No. 74 at 18; *see also* ECF No. 73 at 8–9. But Plaintiffs do not cite a single authority, of any kind, to support that pronouncement. *See id.*

---

[2] Nor do Plaintiffs plausibly allege the Ballot Receipt Deadline enables fraudulent voting, double voting, "the transmission of voters from one State to another," or any of the other claims Plaintiffs make. ECF No. 73 at 9. Plaintiffs themselves entirely fail to explain exactly how the Ballot Receipt Deadline allows for any of that. *Id.* It plainly doesn't.

INTERVENOR-DEFENDANT THE
DNC'S REPLY ISO MOTION TO
DISMISS – 4

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Instead, the primary support for Plaintiffs' theory is a single sentence, plucked from *Foster*, an inapposite Supreme Court opinion. That sentence reads: "When the federal [election] statutes speak of 'the election' of a Senator or Representative, they plainly refer to the combined actions of voters and officials meant to make a final selection of an officeholder …." 522 U.S. at 71; ECF No. 74 at 18–19. Plaintiffs use this quote to argue that the term "election" must mean more than merely casting a ballot because that activity does not involve an election official. ECF No. 74 at 18–19. But Plaintiffs' selection of *ballot receipt* as the relevant "act of consummation" is entirely arbitrary. *See id*. They offer no principled explanation why *receipt* by election officials concludes the "*combined actions* of voters and officials" constituting an "election," as opposed to processing and accepting the ballot (e.g., verifying a voter's signature and confirming the voter is eligible and has not already voted), counting the ballot, or certifying the election. *See id.* Plaintiffs offer nothing significant about *receipt* of a ballot.[3] They just make it up.

*Foster*'s narrow holding offers Plaintiffs no help. *Foster* addressed a Louisiana law providing that any congressional candidate who received a majority of the votes cast in the state's open primary would be "elected," and no general election for that office would be held on the federal election day. 522 U.S. at 70. The Court found that eighty percent of the contested congressional elections held under this system concluded after the open primary. *Id.* The Court struck down Louisiana's system, holding that an election that "is concluded as a matter of law

---

[3] Indeed, both Nevada and federal law expressly provide a variety of official actions that will occur after election day. *See, e.g.*, NRS § 293.387(1) (requiring the canvass of votes "be completed on or before the 10th day following the election"); 3 U.S.C. § 7 (requiring electors meet "on the first Tuesday after the second Wednesday in December next following their appointment"). Plaintiffs also fail to meaningfully explain why *Foster* is not referring to certain affirmative actions of officials and instead refers only to the passive "action" of receiving a voter's ballot.

INTERVENOR-DEFENDANT THE
DNC'S REPLY ISO MOTION TO
DISMISS – 5

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

before the federal election day, with no act in law or in fact to take place on the date chosen by Congress, clearly violates [the Federal Election Day Statutes]." *Id.* at 72.

The Court repeatedly emphasized that its holding was exceedingly narrow. Indeed, the Court wrote that "[t]his case thus does not present the question whether a State must always employ the conventional mechanics of an election. We hold today *only* that if an election does take place, it may not be consummated prior to federal election day." *Id.* at 72 n.4 (emphasis added). Of course, that holding has no bearing on the Ballot Receipt Deadline at issue here.

More importantly, the *Foster* Court expressly declined to define the term "election" in the Federal Election Day Statutes. *Id.* at 72 ("Without paring the term 'election' in § 7 down to the definitional bone, it is enough to resolve this case …."). The Court stressed that "our decision does not turn on any nicety in isolating precisely what acts a State must cause to be done on federal election day (and not before it) in order to satisfy the statute." *Id.* The Court also acknowledged that, at the time, there was "room for argument about just what may constitute the final act of selection within the meaning of the law." *Id.*

Nevertheless, Plaintiffs (incorrectly) present *Foster* as conclusively resolving the issue of what an "election" on election day means. ECF No. 74 at 18–19. It didn't, as even a cursory reading of the case demonstrates. Plaintiffs ask this Court to expand *Foster*'s application to control a question it expressly *declined* to decide. *See Foster*, 522 U.S. at 72; ECF No. 73 at 1; *Millsaps v. Thompson*, 259 F.3d 535, 545 (6th Cir. 2001) (noting "the Supreme Court's silence in *Foster* as to which acts a State must take on federal election day").

Plaintiffs' attempt to expand *Foster* to cover this case only exposes the logical flaw of their position. Plaintiffs assert "[a] 'final selection' does not occur when the voter merely marks the ballot or delivers the ballot to the post office because those events do not involve an election

INTERVENOR-DEFENDANT THE DNC'S REPLY ISO MOTION TO DISMISS – 6

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1  official." ECF No. 74 at 19. But that's just not true. Nevada voters do not vote on random scraps
2  of paper. Election officials are heavily involved in a voter's "final selection" long before a voter
3  delivers the ballot to the post office. They build the entire election infrastructure before a voter
4  makes their candidate selection: election officials continuously update the voter rolls; design and
5  print the ballots, envelopes, and return envelopes; mail those materials; train their workers; set up
6  drop boxes; and perform countless other administrative tasks. "[T]he combined actions of voters
7  and officials meant to make a final selection of an officeholder," *Foster*, 522 U.S. at 71, obviously
8  includes all of this too. So why, then, do the "combined actions of voters and officials" not
9  conclude upon the *voter's final action* of selecting their candidate and submitting their ballot?
10 Plaintiffs cannot say—and don't even attempt the task.

11 Plaintiffs' literal interpretation runs into yet another problem in *Foster*. Their theory hinges
12 on the argument that "the election must be 'consummated' on election day." ECF No. 74 at 19
13 (citing *Foster*, 522 U.S. at 72 n.4). But *Foster* uses "consummated" interchangeably with
14 "concluded as a matter of law."[4] It is hard to imagine that even Plaintiffs would consider an
15 "election concluded as a matter of law" when ballots are received on election day. After all, ballots
16 are almost always still being processed, challenged, cured, and counted well after 11:59 p.m. on
17 election night. In short, Plaintiffs' attempt to expand *Foster* is implausible.

18 Next, Plaintiffs rely on *Maddox v. Board of State Canvassers*, which involved a 1943
19 *Montana state law* that "provide[d] for voting by ballots deposited with the election officials." 149
20 P.2d 112, 115 (Mont. 1944); ECF No. 73 at 8. The Court held that under Montana law "voting is

---

[4] *Compare Foster*, 522 U.S. at 72 n.4 ("We hold today only that if an election does take place, it may not be consummated prior to federal election day.") *with id*. at 72 ("[I]t is enough to resolve this case to say that a contested selection of candidates for a congressional office that is concluded as a matter of law before the federal election day … clearly violates § 7.").

INTERVENOR-DEFENDANT THE
DNC'S REPLY ISO MOTION TO
DISMISS – 7

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

done not merely by marking the ballot but by having it delivered to the election officials and deposited in the ballot box before the closing of the polls on election day." *Id.* But here, the Nevada law specifically provides for voting by ballots deposited with election officials, in a ballot drop box, or mailed on or before election day and received up to four days later. NRS 293.269921. While the Montana Supreme Court said that "[n]othing short of the delivery of the ballot to the election officials for deposit in the ballot box constitutes casting the ballot," *Maddox*, 149 P.2d at 115, the Court based its decision on *Montana* law, which defined an entirely different set of rules governing *Montana* elections. The case has little precedential value outside of Montana and none in Nevada where different voting rules apply. No court has *ever* cited or adopted *Maddox*'s reasoning in any other state. This Court should not either.[5]

### C. Congress has deferred to multiple states' long-standing practice of accepting ballots delivered after election day.

Plaintiffs grossly misrepresent the prevalence and history of state laws that allow mail-in ballots to be received after election day. A majority of states allow mail ballots to arrive after election day for at least some voters (e.g., military voters stationed overseas). *See* ECF No. 59 at 16–17, n.14. In addition to Nevada, fourteen states and the District of Columbia currently accept timely cast mail ballots received after election day from all absentee voters.[6] Many have done so

---

[5] Plaintiffs also cherry-pick phrases from a 100-year-old Supreme Court opinion, *Newberry v. United States*, 256 U.S. 232, 250 (1921). *See* ECF No. 73 at 1 ("That is, the 'election' means the 'final choice' of a federal officer 'by the duly qualified electors.'"). That case has no relevance here and does not even mention the Federal Election Day Statutes. In any event, Plaintiffs' statement agrees with the DNC's position—the voter's "final selection" is the core of an election. ECF No. 59 at 7–9.

[6] *See* Alaska Stat. § 15.20.081(e) (requiring voters mail their ballot on or before election day); Cal. Elec. Code § 3020(b)(1) (ballots are "timely cast" if received within seven days of election day and mailed on or before election day); D.C. Code § 1-1001.05(10A) (same); 10 Ill. Comp. Stat. 5/19-8(c) (ballots postmarked on or before election day received after polls close "shall be counted"); Kan. Stat. Ann. § 25-1132(b) (counting ballots received after polls close if

INTERVENOR-DEFENDANT THE
DNC'S REPLY ISO MOTION TO
DISMISS – 8

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

for years. The list of states with laws like the one Plaintiffs seek to invalidate here includes four of the nation's five most populous states—California, Texas, New York, and Pennsylvania. Universally, and consistent with federal law, states that accept ballots received after election day require that voters cast their vote on or before election day. These states simply confirm that such ballots arriving within a specified period after election day should be counted. They do not, as Plaintiffs claim, "hold open voting" beyond election day. *See* ECF No. 73 at 7.

Moreover, Plaintiffs' historical telling suggests that states receiving mail ballots after election day is a new phenomenon, emerging only in response to the COVID-19 pandemic. Hardly. Washington state has allowed for receipt of mail ballots after election day in the absentee voting context *for over a century* (since at least 1917). *Id.* at 4 (citing P. Orman Ray, *Absent-Voting Laws, 1917*, 12 Am. Pol. Sci. Rev. 251, 253–54 (1918)).[7] As far back as the 1920s, other states, including California, Missouri, Nebraska, and Rhode Island, allowed voters to mail ballots on election day (necessarily meaning the ballot would be received by an election official after election day). *See*

---

mailed on or before election day); Md. Code Ann., Elec. Law § 9-505 (counting ballots received after election day if mailed on or before election day); Mass. Gen. Laws § 25(13) (same); Miss. Code Ann. § 23-15-637(1)(a) (same); N.J. Stat. Ann. § 19:63022(a) (same); N.Y. Elec. Law § 8-412(1) (same); Or. Rev. Stat. § 254.470(6)(e)(B)(i) (same); Tex. Elec. Code Ann. § 86.007(a)(2) (accepting ballots arriving after election day if postmarked no later than 7:00 p.m. on election day); Va. Code Ann. § 24.2-709(B) (counting ballots postmarked on or before election day); Wash. Rev. Code § 29A.40.091(4) (same); W. Va. Code § 3-3-5(g)(2) (receiving ballots up until board of canvassers convenes to begin the canvass if postmarked no later than election day); *see also* Alaska Admin. Code tit. 6, § 25.590(a) (defining "election day" for mail elections as "the deadline by which a voter's ballot must be voted, witnessed, mailed, and if postmarked, date-stamped by the post office").

[7] Plaintiffs offer no principled reason why casting a ballot in one county to be transferred by election officials to another county (almost certainly via the U.S. mail), as allowed under Washington law in the early twentieth century, or a soldier "in the field" giving his ballot to another soldier deputized as an election official to be returned later is any different from a voter today putting their voted ballot in the U.S. mail. *See* ECF No. 73 at 3–4. What matters is that, in all these states, the voter cast their ballot on or by election day and election officials counted it even though it was received after election day. Who carried it from one place to another is irrelevant.

INTERVENOR-DEFENDANT THE DNC'S REPLY ISO MOTION TO DISMISS – 9

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Cal. Political Code §§ 1359(b)-(c), 1360 (James H. Derring ed. 1924), https://bit.ly/3VN7GJg (allowing voter to mail ballot on election day); Mo. Rev. Stat. § 11474 (1939), https://bit.ly/3VQsq2P (same); Neb. Rev. Stat. § 32-838 (1943), https://bit.ly/45zCHmX (same); R.I. Sess. Law, ch. 1863, § 6 (1932), https://bit.ly/3RrDS1V (requiring voter mail ballot on election day and allowing for receipt "before midnight of the Monday following" election day). And of the fifteen states that currently accept mail ballots after election day, eleven did so well before 2020. For example, West Virginia's law allowing receipt of ballots after election day has been in effect since 2007. *See* W. Va. Code § 3-3-5(g)(2). Virginia has allowed post-election-day receipt since 2010, Va. Code Ann. § 24.2-709(B); New York since 2011, N.Y. Elec. Law § 8-412(1) (McKinney); Maryland since 2013, Md. Code Ann., Elec. Law § 9-505; California since 2015, Cal. Elec. Code § 3020(b)(1); and Texas since 2017, Tex. Elec. Code Ann. § 86.007(a)(2). This is neither a new nor isolated approach.

That Congress has not superseded these states' practices is instructive. *See Bost*, 684 F. Supp. 3d at 736. ("Despite these ballot receipt deadline statutes being in place for many years in many states, Congress has never stepped in and altered the rules."). Congress knows states allow for the receipt of mail ballots after election day, and at least one has done so for over 100 years. But in all those years, Congress has chosen not to preempt those electoral regulations. Despite amending the Federal Election Day Statutes multiple times, Congress "has taken no action to curb th[e] established practice" of accepting ballots that arrive by mail after election day. *See Bomer*, 199 F.3d at 776. Most recently, Congress passed the Electoral Count Reform and Presidential Transition Improvement Act ("ECRA"). *See* Pub. L. No. 117-328, 136 Stat. 4459, 5233 (2022). When the ECRA passed in 2022, Congress was well aware that an increasing number of states accepted ballots mailed on or before election day but arriving thereafter. But Congress did *not*

INTERVENOR-DEFENDANT THE DNC'S REPLY ISO MOTION TO DISMISS – 10

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

correct the states' practice of accepting ballots after election day; it said simply that electors "shall be appointed … on election day." 3 U.S.C. § 1; *cf. Bob Jones Univ. v. United States*, 461 U.S. 574, 599 (1983) ("Congress can and often does correct … misconceptions" about the meaning of statutes and finding "an unusually strong case of legislative acquiescence in and ratification by implication" where Congress is "constantly reminded" and aware of a certain practice).

Plaintiffs argue that other courts "erroneously" relied on the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA) to conclude that Congress "allow[s] ballots received after Election Day to be counted" because Congress did not set a deadline for UOCAVA ballot receipt and instead deferred to the state's specific law. ECF No. 74 at 22 (quoting *Bost*, 684 F. Supp. 3d at 737). But deference to state deadlines is the whole point. When Congress enacted UOCAVA, as Plaintiffs acknowledge, *id.*, some states counted ballots cast before election day but received after election day, and others did not. *See* ECF No. 73 at 6.[8] By not clarifying that UOCAVA ballots must be *received* by election day, Congress deferred to the states.

Indeed, the Act of September 16, 1942, *see* ECF No. 73 at 5, demonstrates that when Congress wants to set election day as a categorical deadline for receipt of ballots, it can and does. In that statute (subsequently superseded), Congress set the closing of polls on election day as the unambiguous deadline for *receipt* of ballots cast by servicemembers. Act of Sept. 16, 1942, ch. 561, 56 Stat. 753, § 9. Of course, if the Federal Election Day Statutes already mandated such a deadline, this law would have been superfluous.

---

[8] The MOVE Act, passed in 2009, also defers to state law ballot receipt deadlines. The MOVE Act requires that ballots from overseas servicemembers "for regularly scheduled general elections for Federal office" must be delivered "to the appropriate election officials" "not later than the date by which an absentee ballot must be received [under state law] in order to be counted in the election." 52 U.S.C. § 20304(b)(1).

INTERVENOR-DEFENDANT THE DNC'S REPLY ISO MOTION TO DISMISS – 11

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

### D. Plaintiffs' theory nonsensically differentiates between things that can and cannot happen after election day.

As a practical matter, it is impossible for officials to conduct all the actions needed to "conclude[] [the election] as a matter of law" on election day. Even putting aside the signature comparison process, the opportunity for voters to cure their signature issues, and the counting board activities, just counting itself is time-intensive; nearly 1.5 million votes were cast in Nevada in the 2020 General Election. Nevada Sec'y of State, *2020 General Election Turnout*, https://www.nvsos.gov/sos/home/showpublisheddocument/9054/637426719538900000 (last visited June 16, 2024). Plaintiffs do not and cannot explain why their position does not require all of this to happen before 11:59 p.m. on election day.

### E. Plaintiffs' hypotheticals are irrelevant.

Finally, Plaintiffs propose a string of hypotheticals, none of which advances the ball. *See* ECF No. 73 at 8. Submitting a ballot by election day (whether by mail, or drop box, or hand delivery to election officials) is not the only requirement for casting a mail ballot in Nevada. Before mailing a ballot, voters must also mark or sign the ballot and address their ballot to local election officials—not the Department of Public Safety. NRS 293.269917(1)(c); 293.269921(1)(b); ECF No. 73 at 8. The ballot also, obviously, has to actually be *put in the mail* to count. NRS 293.269921(1)(b). And if a voter chooses to deliver their ballot on election day, they have to actually deliver it—not put it in a trash can. NRS 293.269921(1)(a); ECF No. 73 at 8. These hypotheticals are simply irrelevant. This case is about timing, not whether ballots should be counted if they were not delivered to the right place, or not delivered at all.

/ / /

/ / /

INTERVENOR-DEFENDANT THE DNC'S REPLY ISO MOTION TO DISMISS – 12

Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

## III. CONCLUSION

For the foregoing reasons, the DNC respectfully requests that the Court dismiss Plaintiffs' Complaint.

Dated: June 20, 2024

**PERKINS COIE LLP**

By: *s/ Nathan R. Ring*
Kevin J. Hamilton, WA Bar No. 15648*
KHamilton@perkinscoie.com
Heath L. Hyatt, WA Bar No. 54141*
HHyatt@perkinscoie.com
Margo S. Jasukaitis, WA Bar No. 57045*
MJasukaitis@perkinscoie.com
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

Devon T. Reese, NV Bar No. 7496
Nathan R. Ring, NV Bar No. 12078
Alex Velto, NV Bar No. 14961
REESE RING VELTO, PLLC
200 S. Virginia Street, Suite 655
Reno, Nevada 89501
Telephone: 775.446.8096
devon@rrvlawyers.com
nathan@rrvlawyers.com
alex@rrvlawyers.com

*Admitted to practice in this case under LR IA 11-2*

INTERVENOR-DEFENDANT THE DNC'S REPLY ISO MOTION TO DISMISS – 13

# CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of June 2024, a true and correct copy of the foregoing, **INTERVENOR-DEFENDANT THE DNC'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**, was transmitted to all parties by operation of the Court's electronic filing system:

*/s/Rachael L. Chavez*

An employee of Reese Ring Velto, PLLC

INTERVENOR-DEFENDANT THE DNC'S REPLY ISO MOTION TO DISMISS – 14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000