Jeffrey F. Barr (NV Bar No. 7269)
8275 South Eastern Avenue, Suite 200
Las Vegas, NV 89123
(702) 631-4755
barrj@ashcraftbarr.com

Thomas R. McCarthy* (VA Bar No. 47145)
Conor D. Woodfin* (VA Bar No. 98937)
Thomas S. Vaseliou* (TX Bar No. 24115891)
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
conor@consovoymccarthy.com
tvaseliou@consovoymccarthy.com

Sigal Chattah (NV Bar No. 8264)
5875 S. Rainbow Blvd #204
Las Vegas, NV 89118
(702) 360-6200
sigal@thegoodlawyerlv.com

David A. Warrington* (VA Bar No. 72293)
Gary M. Lawkowski* (VA Bar No. 82329)
2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314
703-574-1206
DWarrington@dhillonlaw.com
GLawkowski@dhillonlaw.com

Michael A. Columbo* (CA Bar No. 271283)
177 Post Street, Suite 700
San Francisco, California 94108
MColumbo@dhillonlaw.com
*admitted pro hac vice

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CARI-ANN BURGESS, et al.,<br><br>Defendants. | No. 3:24-cv-198-MMD-CLB<br><br>**RESPONSE IN OPPOSITION TO VET VOICE'S MOTION TO DISMISS** |

Plaintiffs—the Republican National Committee, the Nevada Republican Party, Donald J. Trump for President 2024, Inc., and Donald J. Szymanski—file this response in opposition to motion to dismiss filed by the Vet Voice Foundation and Nevada Alliance for Retired Americans. *See* Vet Voice Mot. (Doc. 71). Vet Voice's motion raises most of the same arguments as the Secretary's and the DNC's motions to dismiss (Docs. 59, 60). To aid the Court's review, Plaintiffs incorporate their arguments made in response to the Secretary and the DNC, to the extent those same arguments are made by Vet Voice. Plaintiffs expand in this response on the unique arguments made by Vet Voice. For the reasons discussed in this response, the Court should deny the motion.

## ARGUMENT

**I.  The election-day statutes are enforceable by organizations and citizens.**

Courts routinely hear challenges to state laws under the election-day statutes. *Foster v. Love* enjoined enforcement of Louisiana's open-primary statute at the request of "Louisiana voters." 522 U.S. 67, 69 (1997). And the Ninth Circuit has found jurisdiction in election-day cases brought by organizations. *Voting Integrity Project, Inc. v. Keisling*, 259 F.3d 1169, 1170 (9th Cir. 2001). Most of those cases are under 42 U.S.C. §1983, but this Court also has inherent equitable power to enjoin enforcement of state laws that conflict with federal law. *See Ex parte Young*, 209 U.S. 123, 159-60 (1908). Both §1983 and *Ex parte Young* lead to the same conclusion: this Court has power to grant the requested relief.

**A. Plaintiffs have a cause of action under this Court's equitable powers and *Ex parte Young*.**

This Court has equitable power to enjoin state officials from violating the Constitution. The Judiciary Act of 1789 conferred on federal courts jurisdiction over "all suits ... in equity." §11, 1 Stat. 78. Whether a plaintiff has an equitable cause of action depends on whether the relief they request "was traditionally accorded by

1

Opposition to Vet Voice's Motion to Dismiss

1   courts of equity." *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S.
2   308, 319 (1999). And "[c]ourts have long recognized the existence of an implied cause
3   of action through which plaintiffs may seek equitable relief to remedy a constitutional
4   violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). When a state law violates
5   federal law, the State itself would ordinarily be a proper defendant. But the Eleventh
6   Amendment prohibits federal courts from hearing private suits against state
7   governments without the State's consent.

8     The *Ex parte Young* doctrine is one exception to Eleventh Amendment
9   immunity. The doctrine permits suits against state officers who violate federal law in
10  their "official capacity … under state law." *In re Ellett*, 254 F.3d 1135, 1138 (9th Cir.
11  2001). By treating the officer as though she were "not a state agent," *Ex parte Young*
12  permits courts to enjoin enforcement of state laws that violate federal law. The
13  Secretary does not dispute that Plaintiffs have a valid cause of action under *Ex parte*
14  *Young*, but Vet Voice does. "In determining whether the doctrine of *Ex parte Young*
15  avoids an Eleventh Amendment bar to suit, a court need only conduct a
16  'straightforward inquiry into whether [the] complaint alleges an ongoing violation of
17  federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc.*
18  *v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).

19    This test consists of three elements, and Plaintiffs meet all three. First, a
20  plaintiff must allege that the state official is engaging in or will engage in "a course of
21  activity in violation of federal law." *In re Ellett*, 254 F.3d 1135, 1138 (9th Cir. 2001).
22  Plaintiffs have alleged that here: the Secretary and the county election officials named
23  as defendants will count mail ballots received after election day, which violates the
24  federal election-day statutes. *E.g.*, Compl. (Doc. 1) ¶¶64-69. Second, the requested
25  relief must be prospective. *In re Ellett*, 254 F.3d at 1138. That's also true here:
26  Plaintiffs don't ask for damages—they request only prospective declaratory and
27  injunctive relief. *See* Compl. 15-16. Third, the "state official sued 'must have some
28  connection with the enforcement of the act.'" *Coal. to Defend Affirmative Action v.*

2

1   *Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012) (quoting *Ex parte Young*, 209 U.S. at 157).
2   That's true here, as well: The county registrars are responsible for "establish[ing]
3   procedures for the processing and counting of mail ballots" in their counties. Nev. Rev.
4   Stat. §293.269925(1); *see also id.* §293.269911-.269937, 244.164. The county clerks are
5   responsible for certifying the election results of their counties. Nev. Rev. Stat.
6   §293.393. And the Secretary of State is the State's "Chief Officer of Elections" who "is
7   responsible for the execution and enforcement of the provisions of title 24 of NRS and
8   all other provisions of state and federal law relating to elections in" Nevada. Nev. Rev.
9   Stat. §293.124. All defendants share some direct responsibility for enforcing the
10  election-day deadline.

11  This test "is quite simple," and when a plaintiff satisfies these three elements,
12  it "may proceed under *Ex parte Young*." *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1189
13  (9th Cir. 2003). Vet Voice—and the other defendants—don't even argue that Plaintiffs
14  fail to meet the *Ex parte Young* elements. Instead, Vet Voice points out that the
15  Supremacy Clause is not a cause of action. Vet Voice Mot. 13 (citing *Armstrong v.
16  Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324-25 (2015)). That's true, but irrelevant—
17  Plaintiffs don't invoke the Supremacy Clause as a cause of action. Plaintiffs rely on
18  the inherent equitable cause of action to enjoin enforcement of preempted state law,
19  as recognized in *Ex parte Young*. And "[i]n *Armstrong*," the Supreme Court
20  "reaffirmed" that plaintiffs "seeking injunctive relief against state officers must
21  satisfy *Ex parte Young*'s equitable exception" for federal preemption claims. *Air Evac
22  EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 515 (5th Cir.
23  2017). That is, the Supremacy Clause "instructs courts what to do when state and
24  federal law clash, but is silent regarding who may enforce federal laws in court, and
25  in what circumstances they may do so." *Armstrong v. Exceptional Child Ctr., Inc.*, 575
26  U.S. 320, 325 (2015). Indeed, "the availability of prospective relief of the sort awarded
27  in *Ex parte Young* gives life to the Supremacy Clause." *Green v. Mansour*, 474 U.S. 64,
28  68 (1985).

3

Opposition to Vet Voice's Motion to Dismiss

1 Vet Voice next argues that Plaintiffs can sue state officials only to enjoin future
2 enforcement of a law *against* Plaintiffs. But when the challenged statute "is simply
3 not the type of statute that gives rise to enforcement proceedings," the "lack of any
4 enforcement proceeding" by the state officials "under the challenged statute does not
5 preclude [the] suit." *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992).
6 That's why *Ex parte Young* presented "no barrier" to the Los Angeles Bar Association's
7 challenge to a statute limiting the number of superior court judges, even though the
8 statute imposed no enforcement risk against the bar association. *Id.* The bar
9 association had standing because the limit on superior court judges caused delays in
10 civil litigation and deprived litigants of access to the courts, which in turn harmed the
11 organizational interests of the bar. *Id.* at 700-01. Similarly, the Ninth Circuit
12 permitted a pro-affirmative-action group to challenge a California voter proposition
13 that banned affirmative action in public universities. *See Coal. to Defend Affirmative*
14 *Action v. Brown*, 674 F.3d 1128, 1132-34 (9th Cir. 2012). The plaintiffs had a claim
15 under *Ex parte Young* against the University of California President even though the
16 president did not enforce the ban *against* the plaintiffs. *Id.* at 1134. What matters
17 under *Ex parte Young* is whether the statute is "'being given effect' by the officials,"
18 not whether it's being enforced against the plaintiffs. *Id.* (quoting *Eu*, 979 F.2d at 704).
19 Vet Voice points out that the "Ninth Circuit allowed an action under *Ex parte Young*"
20 by tenants to enjoin future evictions against them. Vet Voice Mot. 13-14. But that the
21 Ninth Circuit "allow[s]" suits to enjoin enforcement against plaintiffs does not mean
22 it prohibits all other *Ex parte Young* suits.

23 Vet Voice's argument is really just a repackaged standing argument. But *Eu*
24 confirms that a plaintiff suing to enjoin enforcement of an unconstitutional state law
25 need only allege "a threatened injury fairly traceable to the action challenged and
26 likely to be redressed by a favorable decision." 979 F.2d at 700. And just like the bar
27 association in *Eu*, the organizational Plaintiffs here have "standing in [their] own
28 right" because the law they challenge injures their ability to accomplish their

4

Opposition to Vet Voice's Motion to Dismiss

1  organizational missions. *Id.* at 701. The Supreme Court recently confirmed as much
2  in *Food and Drug Administration v. Alliance for Hippocratic Medicine*, No. 23-235,
3  2024 WL 2964140 (U.S. June 13, 2024) (slip op.). The Court explained that a plaintiff
4  has been injured when a defendant's "actions directly affected and interfered with"
5  the plaintiff's "core business activities." *Id.* at *13. That standard was met in *Havens*
6  when "false information … perceptibly impaired" an organization's ability "to provide
7  counseling and referral services." *Id.* (quotation marks and citation omitted).

8        The organizational Plaintiffs allege to a T the kind of diversion of resources that
9  creates an injury in fact. The RNC and the NVGOP "work[] to elect Republican
10 candidates to state and federal office." Compl. ¶¶12, 17. The Trump Campaign has
11 those "same interests" with respect to President Trump's presidential campaign.
12 Compl. ¶19. They allege that counting late-received mail-in ballots "injures Plaintiffs
13 here by causing competitive electoral harms and by requiring Plaintiffs to divert
14 resources to conduct election activities beyond election day." Compl. ¶6. And the
15 challenged law requires them to "maintain mail-ballot-specific get-out-the-vote
16 operations to encourage mail ballot voters to return their mail ballots through Election
17 Day," which "diverts resources from in-person Election Day get-out-the-vote
18 activities." Compl. ¶49. These injuries don't depend on the organizational Plaintiffs'
19 status as "issue-advocacy organization[s]." *All. for Hippocratic Medicine*, 2024 WL
20 2964140, at *13. Rather, they injure the organizational Plaintiffs' "core business" of
21 electing Republicans and turning out Republican voters during elections. *Id.* Those
22 injuries would at least "be to some extent ameliorated" by an injunction against the
23 state officials responsible for enforcing the post-election receipt of mail ballots. *Eu*,
24 979 F.2d at 701. And that is true regardless of whether the defendants could bring
25 "any enforcement proceeding … against the [plaintiffs] under the challenged statute."
26 *Id.* at 704.

27
28

5

Opposition to Vet Voice's Motion to Dismiss

### B. Plaintiffs have a cause of action under Section 1983.

Vet Voice cites no case dismissing an election-day claim for lacking a cause of action under 42 U.S.C. §1983. And case after case confirms why it can't. Plaintiffs here, just like the plaintiffs in *Foster*, seek "declaratory and injunctive relief … under 42 U.S.C. §1983." *Love v. Foster*, 90 F.3d 1026, 1028 (5th Cir. 1996), *aff'd*, 522 U.S. 67. Numerous plaintiffs have proceeded under §1983 in similar election-day cases in the Ninth Circuit and other courts. *E.g.*, *Keisling*, 259 F.3d at 1170 & n.2 (same); *Voting Integrity Project, Inc. v. Bomer*, 199 F.3d 773, 774 (5th Cir. 2000) (same); *Millsaps v. Thompson*, 259 F.3d 535, 542 (6th Cir. 2001) (same). This case is no different.

The federal laws establishing a uniform election day protect the fundamental rights to vote and stand for office. The right to vote derives in part from the right of association that is at the core of the First Amendment. *See Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983); *Williams v. Rhodes*, 393 U.S. 23, 38 (1968); *Storer v. Brown*, 415 U.S. 724, 756 (1974). And "the right to stand for office is to some extent derivative from the right of the people to express their opinions by voting." *Nader v. Keith*, 385 F.3d 729, 737 (7th Cir. 2004) (citing *Munro v. Socialist Workers Party*, 479 U.S. 189, 193 (1986)). "[T]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964); *see also Baker v. Carr*, 369 U.S. 186, 206 (1962). Courts thus recognize that vote dilution is an injury of a constitutional right, even when they hold that the injury is too intangible or generalized to satisfy Article III. *E.g.*, *Bognet v. Sec'y Commonwealth of Pa.*, 980 F.3d 336, 353 (3d Cir. 2020), *cert. granted, judgment vacated sub nom. Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021). Plaintiffs have already explained at length why those injuries satisfy Article III. *See* Pl. Resp. (Doc. 74) at 6-17. It is enough here to recognize, as the Supreme Court did in *Foster*, that the injury of those fundamental rights is enforceable through 42 U.S.C. §1983.

Vet Voice argues that "Congress must have intended that the provision in question benefit the plaintiff." Vet Voice Mot. 14 (quoting *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997)). But it doesn't dispute that the right to vote and the right to stand for office are "rights, privileges, or immunities secured by the Constitution and laws of the United States." *Gonzaga Univ. v. Doe,* 536 U.S. 273, 283 (2002). And laws enacted under the Elections Clause—like the election-day statutes—are "safeguards which experience shows are necessary in order to enforce the fundamental right involved." *Smiley v. Holm*, 285 U.S. 355, 366 (1932); *see also Foster*, 522 U.S. at 71 n.2. The election-day statutes "unambiguously impose a binding obligation on the States," and the rights they protect are "not so vague and amorphous that [their] enforcement would strain judicial competence." *Blessing*, 520 U.S. at 340-41 (cleaned up). A state law that "clearly violates" the election day statutes necessarily violates the fundamental rights they protect. *Foster*, 522 U.S. at 72. That's why Vet Voice can't cite a single election-day case dismissing for lack of a cause of action under §1983.

## **CONCLUSION**

Vet Voice's remaining arguments are addressed in Plaintiffs' responses to the Secretary's motion and the DNC's motion. The Court should deny the motion to dismiss.

7

Opposition to Vet Voice's Motion to Dismiss

| | | |
|---|---|---|
| 1 | Dated: June 21, 2024 | Respectfully submitted, |
| 2 | Thomas R. McCarthy* | /s/ Jeffrey F. Barr |
|   | VA Bar No. 47145 | |
| 3 | Conor D. Woodfin* | Jeffrey F. Barr (NV Bar No. 7269) |
|   | VA Bar No. 98937 | ASHCRAFT & BARR LLP |
| 4 | Thomas S. Vaseliou* | 8275 South Eastern Ave., Suite 200 |
|   | TX Bar No. 24115891 | Las Vegas, NV 89123 |
| 5 | CONSOVOY MCCARTHY PLLC | (702) 631-4755 |
|   | 1600 Wilson Boulevard, Suite 700 | barrj@ashcraftbarr.com |
| 6 | Arlington, VA 22209 | |
|   | (703) 243-9423 | *Counsel for the RNC, Donald J.* |
| 7 | tom@consovoymccarthy.com | *Trump for President 2024, Inc., and* |
|   | conor@consovoymccarthy.com | *Donald J. Szymanski* |
| 8 | tvaseliou@consovoymccarthy.com | |
| 9 | *Counsel for Plaintiffs* | /s/ Sigal Chattah |
| 10 | | Sigal Chattah (NV Bar No. 8264) |
|   | David A. Warrington* | CHATTAH LAW GROUP |
| 11 | VA Bar No. 72293 | 5875 S. Rainbow Blvd #204 |
|   | Gary M. Lawkowski* | Las Vegas, NV 89118 |
| 12 | VA Bar No. 82329 | (702) 360-6200 |
|   | DHILLON LAW GROUP, INC. | sigal@thegoodlawyerlv.com |
| 13 | 2121 Eisenhower Avenue, Suite 608 | |
|   | Alexandria, VA 22314 | *Counsel for the Nevada Republican* |
| 14 | 703-574-1206 | *Party* |
|   | DWarrington@dhillonlaw.com | |
| 15 | GLawkowski@dhillonlaw.com | |
| 16 | Michael A. Columbo* | |
|   | CA Bar No. 271283 | |
| 17 | DHILLON LAW GROUP, INC. | |
|   | 177 Post Street, Suite 700 | |
| 18 | San Francisco, California 94108 | |
|   | MColumbo@dhillonlaw.com | |
| 19 | | |
|   | *Counsel for Donald J. Trump for* | |
| 20 | *President 2024, Inc.* | |
| 21 | *admitted pro hac vice | |

**CERTIFICATE OF SERVICE**

This filing was served on all appearing parties on the 21st day of June 2024 by electronic service by way of the Court's ECF System.

/s/ Jeffrey F. Barr
An employee of Ashcraft & Barr LLP

8

Opposition to Vet Voice's Motion to Dismiss