David R. Fox (NV Bar No. 16536)
Christopher D. Dodge (*pro hac vice*)
**Elias Law Group LLP**
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
(202) 968-4490
dfox@elias.law
cdodge@elias.law

Bradley S. Schrager (NV Bar No. 10217)
Daniel Bravo (NV Bar No. 13078)
**Bravo Schrager LLP**
6675 South Tenaya Way, Suite 200
Las Vegas, NV 89113
(702) 996-1724
bradley@bravoschrager.com
daniel@bravoschrager.com

*Attorneys for Intervenor-Defendants*
*Vet Voice Foundation and Nevada Alliance for Retired Americans*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| REPUBLICAN NATIONAL COMMITTEE; NEVADA REPUBLICAN PARTY; DONALD J. TRUMP FOR PRESIDENT 2024, INC.; and DONALD J. SZYMANSKI,<br><br>Plaintiffs,<br><br>v.<br><br>CARI-ANN BURGESS, *in her official capacity as the Washoe County Registrar of Voters*; JAN GALASSINI, *in her official capacity as the Washoe County Clerk*; LORENA PORTILLO, *in her official capacity as the Clark County Registrar of Voters*; LYNN MARIE GOYA, *in her official capacity as the Clark County Clerk*; FRANCISCO AGUILAR, *in his official capacity as Nevada Secretary of State*,<br><br>Defendants. | Case No. 3:24-cv-00198<br><br><br><br>**VET VOICE INTERVENOR-DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS** |

- 1 -

**INTRODUCTION**

The Court should dismiss Plaintiffs' complaint for at least three independent reasons. *First*, the Court lacks jurisdiction because Plaintiffs lack standing: their asserted injury boils down to a policy objection to the counting of other qualified voters' ballots under uniform rules, which does not suffice. *See* Vet Voice Intervenors' Mot. to Dismiss 6–13, ECF No. 71 ("VV MTD"). *Second*, Plaintiffs' claims fail on the merits: Nevada's Mail Ballot Receipt Deadline, NRS 293.269921(1), is entirely consistent with the federal Election Day Statutes, 2 U.S.C. §§ 1, 7; 3 U.S.C. § 1, because it allows only votes cast before election day to be counted and merely governs when mail ballots must be received by election officials. *See* VV MTD at 15–22. And the Deadline does not violate Plaintiffs' constitutional rights, because it does not impair their ability to cast valid votes or to run for office. *Id.* at 22–24. *Third*, Plaintiffs lack a private right of action to judicially enforce the Election Day Statutes, as Count I of their Complaint seeks to do. *See id.* at 13–15.

Plaintiffs' Response to the Vet Voice Intervenors's Motion to Dismiss focuses on that last argument, addressing the others principally by incorporating other briefs. *See* Resp. in Opp'n to Vet Voice's Mot. to Dismiss 1, ECF No. 81 ("Resp."). But the Court must address standing first, and it need not address the private right of action issue at all if it concludes—as it should and as every other court to consider the question has—that Plaintiffs lack standing or that their arguments for a statutory or constitutional violation fail on the merits. If the Court does reach the private right of action issue, however, it should hold that Plaintiffs have no private right to sue to enforce the Election Day Statutes. Plaintiffs principally argue for a broad, equitable right to sue any "state officers who violate federal law" under *Ex parte Young*, *id.* at 2, but they cite no case broad enough to cover their claims in this case. Plaintiffs focus instead on cases addressing the distinct questions of standing and Eleventh Amendment immunity, even though "[i]t is crucial not to conflate Article III's requirement of injury in fact with a plaintiff's potential cause of action, for the concepts are not coextensive." *Perry v. Newsom*, 18 F.4th 622, 632 (9th Cir. 2021) (cleaned up). And Plaintiffs' belated reliance on 42 U.S.C. § 1983—which they omitted from Count I of their complaint— serves them no better, because Plaintiffs do not even *try* to identify in the Election Day Statutes

the sort of "rights-creating, individual-centric language" necessary to create a right enforceable under § 1983. *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 183 (2023) (cleaned up). They instead conflate Count I with their constitutional claims in Counts II and III, as to which Vet Voice agrees they have a cause of action—those claims just fail on the merits.

The Court should grant the Vet Voice Intervenors' motion to dismiss.

## ARGUMENT

If the Court concludes, as it should, that Plaintiffs lack standing or that there is no direct conflict between the Ballot Receipt Deadline and the Election Day Statutes, then there is no need for the Court to reach the cause of action question. But Count I also must be dismissed for the further reason that there is no private right of action to enforce the Election Day Statutes either under *Ex parte Young* or 42 U.S.C. § 1983.

### I. Plaintiffs lack standing.

As a threshold matter Plaintiffs lack standing to sue and their complaint must be dismissed because, at a fundamental level, they are not injured by the conduct they challenge. They strongly *wish* that Nevada election officials would not count other voters' ballots that are received after election day, but a litigant "may not establish standing simply based on the 'intensity of the litigant's interest' or because of strong opposition to the government's conduct." *FDA v. All. for Hippocratic Med.*, 2024 WL 2964140, at *13 (U.S. June 13, 2024) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 486 (1982). Rather, Article III requires that they show some concrete, non-speculative injury to their organizational interests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiffs' alleged harm comes from having to conduct election activities up to and beyond election day, including encouraging voters to return ballots and observing post-election ballot counting, Compl. ¶¶ 14, 17–19, ECF No. 1 ("Compl."), but they will have to do that regardless: no matter what the Court orders in this case, ballots will be returned through election day, and many will be counted after. All the Ballot Receipt Deadline does is allow timely ballots cast by qualified voters to be counted. *See* VV MTD at 2–3, 8–9. This in no way impairs Plaintiffs' "vital

interests in protecting the ability of Republican voters to cast, and Republican candidates to receive, effective votes in Nevada elections[.]" Compl. ¶¶ 13, 17, 19. To the contrary: it safeguards those interests.

Plaintiffs also assert "competitive electoral harms" from the Ballot Receipt Deadline, Resp. at 5, specifically that "the post-election deadline favors Democrats in Nevada, whose voters disproportionately vote by mail," Resp. in Opp'n to Sec'y's Mot. to Dismiss 10, ECF No. 74. But the facially neutral deadline applies equally to all voters and is not an "unfair advantage in the election process." *Donald J. Trump for President, Inc. v. Cegavske*, 488 F. Supp. 3d 993, 1003 (D. Nev. 2020) (quoting *Drake v. Obama*, 664 F.3d 774, 783 (9th Cir. 2011)). Candidates do not have standing to challenge a uniform, neutral election procedure that makes voting *easier* simply on the belief that it would be better for them if Nevada rejected whole tranches of valid electors' ballots. *See* VV MTD at 8–10.[1] Courts within this district have therefore properly rejected claims of organizational injury where a "challenged law expands access to voting through mail" rather than "impact on a voter's ability to vote." *Cegavske*, 488 F. Supp. 3d at 1002; *cf. Short v. Brown*, 893 F.3d 671, 677 (9th Cir. 2018) (explaining that a law that "makes it easier for some voters to cast their ballots by mail" "does not burden anyone's right to vote"). The Mail Ballot Receipt Deadline indisputably imposes "no harms" on Plaintiffs "that are unique from their electoral opponents." *Cegavske*, 488 F. Supp. 3d at 1003. It is a law of general application that helps voters of all stripes.

## II. Plaintiffs fail to state a claim.

On the merits, the Complaint fails to state a claim that the Ballot Receipt Deadline violates federal law for the reasons set forth in Vet Voice Intervenors' Motion, *see* VV MTD at 15–24, and the reasons offered in reply by the other Defendants, *see* DNC's Reply in Supp. of Mot. to Dismiss 1–11, ECF No. 77 ("DNC Reply"); Def. Sec'y of State's Reply in Supp. of Mot. to Dismiss 11–

---

[1] Plaintiffs cite *Mecinas v. Hobbs*, 30 F.4th 890, 898 (9th Cir. 2022) in claiming they have a competitive injury. ECF No. 74 at 10–11. But that case proves the point: *Mecinas* involved a ballot-order statute which treated candidates differently, resulting in an unfair advantage. *See* 30 F.4th at 895 ("[T]he result of these rules has been that . . . the vast majority of Arizona's voting population received a ballot with the Republican Party's candidates in the top position."). In contrast here, the Mail Ballot Receipt Deadline treats all candidates the same and equally benefits *all* voters, including Plaintiffs' supporters.

- 4 -
INTERVENOR-DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

13, ECF No. 78 ("Sec'y Reply"). Vet Voice Intervenors raise several additional points not addressed in those earlier replies.

*First*, it bears emphasis that Plaintiffs fail to identify—never mind satisfy—the relevant preemption standard. Because the Constitution expressly reserves the manner of conducting elections for the States, federal statutes "alter" state election laws only when the state law cannot possibly "operate harmoniously" with the federal law "in a single procedural scheme." *Gonzalez v. Arizona*, 677 F.3d 383, 394 (9th Cir. 2012), *aff'd sub nom. Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013); *see also Fish v. Kobach*, 840 F.3d 710, 727 (10th Cir. 2016) (agreeing with this standard and deeming it consistent with *Foster*).[2] Plaintiffs fail to acknowledge this heavy burden and make no effort to meet it. Nevada has now conducted several elections with a post-election ballot receipt deadline, and Plaintiffs nowhere suggest such a rule failed to "operate harmoniously" with federal law. The same is true with the many other states and territories that have similar laws, many of which have been on the books far longer than NRS 293.269921(1).

*Second*, the plain text of the Election Day Statutes is entirely consistent with the Ballot Receipt Deadline. Nothing in the text of the Election Day Statutes "provide[s] for *when* or *how* ballot counting occurs." *Bognet v. Sec'y Commonwealth of Pa.*, 980 F.3d 336, 353 (3rd Cir. 2020); *see also* DNC Reply at 3; VV MTD at 16–17. To the contrary, by specifying a date for the "election," the Election Day Statutes specify only when "[t]he act of choosing" must occur. *Foster v. Love*, 522 U.S. 67, 71 (1997) (citing contemporaneous dictionary). And under NRS 293.269921(1), voters must make their choice by election day, by depositing their ballot in the mail. *Cf. Donald J. Trump for President, Inc. v. Way*, 492 F. Supp. 3d 354, 372 (D.N.J. 2020) (concluding state law "prohibit[ing] canvassing ballots cast *after* election day" was "in accordance with the Federal Election Day Statutes"). Nevada's ballot receipt deadline is thus consistent with the plain text of the federal Election Day Statutes, defeating any preemption claim.

*Third*, the Secretary and DNC correctly explain why UOCAVA, the MOVE Act, and other

---

[2] The Sixth Circuit has adopted an even *more* demanding standard, explaining the federal Election Day Statutes preempt state law only where "compliance with both . . . present[s] a physical impossibility." *Millsaps v. Thompson*, 259 F.3d 535, 549 (6th Cir. 2001) (citation omitted).

INTERVENOR-DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

federal legislation reflects Congress's recognition that states may determine their own ballot receipt deadlines. *See* Sec'y Reply at 12–13; DNC Reply at 11. In addition to these federal statutes, federal *courts* have also frequently remedied state violations of UOCAVA by ordering that ballot receipt deadlines be extended past election day—an issue of critical concern to Vet Voice. *See* VV MTD at 21 n.11; *see also Bost v. Ill. State Bd. of Elections*, 684 F. Supp. 3d 720, 737 (N.D. Ill. 2023) ("[T]he United States Attorney General often seeks court-ordered extensions of ballot receipt deadlines to ensure that military voters are not disenfranchised."). On Plaintiffs' flawed reasoning, those courts have each issued injunctions in violation of the Election Day Statutes, and such relief must be unavailable for future UOCAVA violations. Such a finding not only misreads the Election Day Statutes —it would also severely harm Vet Voice's constituents.

*Fourth*, Counts II and III fail because the Ballot Receipt Deadline does not violate constitutional rights to stand for office or to vote. The Ballot Receipt Deadline does not burden those rights at all, because it does not make it harder for anyone to stand for office or to vote—it makes it easier. Laws that "make[] it easier for some voters to cast their ballots by mail" "do[] not burden anyone's right to vote." *Short*, 893 F.3d at 677. The Supreme Court's decision in *Foster v. Love*, is not to the contrary, as Plaintiffs argue, ECF No. 74 at 23, because it merely held that a very different election regime "conflicts with federal law and to that extent is void"—it did not say it violated constitutional rights to vote or stand for office, or alter the constitutional test for such claims. 522 U.S. at 74.

### III. Plaintiffs lack a cause of action for their statutory claim in Count I.

Count I is further subject to dismissal because Plaintiffs have no private right of action to enforce the Election Day Statutes. Plaintiffs may sue for an injunction enforcing federal law only if they have a "private right[] of action . . . created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Plaintiffs invoke two causes of action, but neither suffices to support their claims. Any equitable cause of action for a federal-law exemption from unlawful regulation is too narrow to support Plaintiffs' claim, and 42 U.S.C. § 1983 does not support their statutory claim in Count I either.

### A. *Ex parte Young* does not provide Plaintiffs with a general equitable cause of action to enforce the Election Day Statutes.

Whether there is a cause of action is, primarily, a question of statutory construction. "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Alexander*, 532 U.S. at 286. "If the statute itself does not display an intent to create a private remedy, then a cause of action does not exist and courts may not create one . . . ." *Ziglar v. Abbasi*, 582 U.S. 120, 133 (2017) (cleaned up). Plaintiffs do not argue that the Election Day Statutes themselves create a private right of action—and they plainly do not. Nor, as explained further below, do the Election Day Statutes create rights enforceable under 42 U.S.C. § 1983. And as the Supreme Court explained in *Armstrong*, the mere fact that a state law may be preempted by federal statute does not itself establish a constitutional cause of action. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–25 (2015).[3]

Rather than engage in the required statutory analysis, Plaintiffs principally rely on an asserted equitable cause of action under *Ex parte Young*. But *Ex parte Young* does not provide an equitable cause of action for injunctive relief any time a state officer violates federal law. Plaintiffs do not cite any case recognizing such a broad equitable right to sue in the absence of a statutory cause of action. They instead cite a smorgasbord of cases addressing entirely distinct legal issues or recognizing a far narrower equitable cause of action that does not help Plaintiffs here.

*First*, many of Plaintiffs' cases involved an express statutory cause of action—precisely what Plaintiffs lack here. *In re Ellet* was a bankruptcy case that the bankruptcy code authorized the Plaintiff to bring. 254 F.3d 1135, 1149 (9th Cir. 2001). *Coalition to Defend Affirmative Action v. Brown* was a lawsuit under 42 U.S.C. § 1983 to enforce the Equal Protection Clause. 674 F.3d 1128, 1132 (9th Cir. 2012). *Miranda B. v. Kitzhaber* was a claim under the Americans with

---

[3] That the Election Day Statutes preempt state law under the Elections Clause, rather than the Supremacy Clause, does not change the analysis. *See Tex. Voters All. v. Dallas Cnty.*, 495 F. Supp. 3d 441, 462 (E.D. Tex. 2020) ("Any rights and corresponding remedies for Elections Clause violations must therefore arise from laws enacted by Congress pursuant to its authority under the Elections Clause.").

Disabilities and Rehabilitation Acts, which expressly authorize private lawsuits, via a cross-reference to Title VI. 328 F.3d 1181, 1183 (9th Cir. 2003); *see* 42 U.S.C. § 12133; 29 U.S.C. § 794a; *Alexander*, 532 U.S. at 280. *Green v. Mansour* was a claim under § 1983 for violations of the statutes governing the Aid to Families With Dependent Children program. 474 U.S. 64, 66 (1985). *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, was a state-law breach of contract case. 527 U.S. 308, 313, 318 n.3 (1999). In each of those cases, there was no need for the court to assess whether there was a private right of action—there plainly was.

The discussion of *Ex parte Young* in those cases—and in others that Plaintiffs cite[4]—concerned a separate issue: whether—cause of action or no—the defendant was immune from suit under the Eleventh Amendment. As a general rule, the Eleventh Amendment is a jurisdictional bar to federal lawsuits against states. *Coal. to Defend Affirmative Action*, 674 F.3d at 1133. But *Ex parte Young* provides an exception to that jurisdictional bar for "actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law." *Id.* at 1134. That principle, however, is merely an *exception* to a jurisdictional bar that would otherwise deprive the court of jurisdiction. It is not itself an affirmative cause of action. And "to say that a claim against a state officer sidesteps sovereign immunity is not enough; plaintiffs still need a right of action." *Ind. Prot. & Advoc. Servs. v. Ind. Fam. & Soc. Servs. Admin.*, 603 F.3d 365, 392 (7th Cir. 2010) (Easterbrook, C.J., dissenting on other grounds).[5] It is this exception to immunity—and not the separate cause of action issue—that is governed by the three-element test that Plaintiffs discuss in their response. *See, e.g.*, *Coal. To Defend Affirmative Action*, 674 F.3d at 1134; *Miranda B.* 328 F.3d at 1189.

Plaintiffs cite only one case that addresses the equitable cause-of-action issue, rather than

---

[4] *See Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (applying *Ex parte Young* immunity exception before rejecting claim on the merits, without addressing existence of a cause of action); *Air Evac EMS, Inc. v. Tex. Dep't of Ins.*, 851 F.3d 507, 515–19 (5th Cir. 2017) (analyzing Eleventh Amendment immunity without addressing whether the plaintiff had a private cause of action).

[5] The *en banc* majority in *Indiana Protection and Advocacy Services* found the plaintiffs *did* have a cause of action under the Protection and Advocacy for Individuals with Mental Illness Act of 1985, after conducting the necessary analysis under *Gonzaga* and *Alexander*. *See* 603 F.3d at 375. Plaintiffs here do not even venture such analysis under the Election Day Statutes.

just the immunity issue, and it does not support their argument for a broad equitable right to sue for any violation of federal law. *Roman v. Wolf* was a lawsuit by detained immigrants against federal officials who were detaining the immigrants in violation of their due process rights. 977 F.3d 935, 939 (9th Cir. 2020). That is precisely the sort of equitable claim for a federal-law exemption from unlawful regulation for which courts have long recognized an implied cause of action. *Armstrong*, 575 U.S. at 326 ("[A]s we have long recognized, if an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted."); *see also, e.g.*, *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110 (1902) (allowing equitable suit seeking exemption from allegedly unlawful restrictions by Postmaster General). But that is not what Plaintiffs claim here, as they are not regulated by the Ballot Receipt Deadline, and they do not seek an exemption from it—they seek an affirmative change to the state's own conduct.

*Second*, Plaintiffs argue this cause of action argument is "just a repackaged standing argument." Resp. at 4. But that is simply wrong. The standing inquiry is entirely separate. Article III standing is a question of the Court's constitutional power to adjudicate a case. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014). And "[i]t is firmly established" that "the absence of a valid . . . case of action does not implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional *power* to adjudicate the case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). Even if Plaintiffs were correct that they have standing—which they do not—that has no bearing on the distinct question of whether they have a cause of action.

**B.     The Election Day Statutes are not enforceable under §1983.**

Plaintiffs fall back on the idea that they have a cause of action for their preemption claim under 42 U.S.C. § 1983—despite their choice to plead § 1983 as the basis for Counts II and III of their complaint, but notably *not* Count I. *Compare* Compl. ¶¶ 72–76 (citing § 1983 for Count II) *and id.* ¶¶ 77–82 (same for Count III) *with id.* ¶¶ 62–71 (citing only *Ex Parte Young* for Count I). This belated choice does little to aid Plaintiffs, however, because § 1983 plainly does not supply

them a cause of action for a "Violation of 3 U.S.C. §1, 2 U.S.C. §§1, 7." *Id.* at 13.

To be sure, "§ 1983 generally supplies a remedy for the vindication of rights secured by federal statutes." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002). But before finding a federal statute enforceable through § 1983, the court "must first determine whether Congress *intended to create a federal right*." *Id.* at 283–84. It is the "plaintiff [who must] demonstrate[] that a statute confers an individual right," *id.* at 284, and that it does so "*unambiguously*." *Talevski*, 599 U.S. at 180 (emphasis in original). The "question" of whether a statute creates a federal right enforceable through § 1983 is "definitively answered in the negative" where a "statute by its terms grants no private rights to any identifiable class." *Gonzaga*, 536 U.S. at 283–84 (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 576 (1979)). "For a statute to create such private rights, its text must be 'phrased in terms of the persons benefited.'" *Id.* (quoting *Cannon v. Univ. of Chicago,* 441 U.S. 677, 692, n.13 (1979)). And it also must "contain[] 'rights-creating,' individual-centric language with an 'unmistakable focus on the benefited class.'" *Talveski*, 599 U.S. at 183 (quoting *Gonzaga*, 536 U.S. at 284, 287).

Not one of the three Election Day Statutes is "phrased in terms of the persons benefitted" or grants a right to an "identifiable class" that would include Plaintiffs. *See generally* 3 U.S.C. §1; 2 U.S.C. §§ 1, 7; *see also UFCW Loc. 1500 Pension Fund v. Mayer*, 895 F.3d 695, 699 (9th Cir. 2018) (finding statute unenforceable under § 1983 where it lacked "rights-creating language" and any "unmistakable focus" on the individuals protected (citation omitted)). Plaintiffs do not even attempt to argue otherwise in their response. And it is clear why: each statute is simply a "directive" to the States about when certain elections must be held and thus "reveals no congressional intent to create a private right of action" for Plaintiffs or others like them. *Armstrong*, 575 U.S. at 331 (quoting *Alexander*, 532 U.S. at 289). The Election Day Statutes are thus a far cry from other federal statutes found to unambiguously confer a right to identifiable persons, such as those describing specific "rights" of nursing home "residents," *see, Talveski*, 599 U.S. at 181–82; those guaranteeing that "[n]o person in the United States shall" be subject to discrimination in education based on sex, *Cannon*, 441 U.S. at 681–82; or those describing "the right of any individual to vote

in any election," *Schwier v. Cox*, 340 F.3d 1284, 1296 (11th Cir. 2003).

Unable to identify any such "rights-creating, individual-centric language" in the Election Day Statutes that would enable them to sue, *Talevski*, 599 U.S. at 183 (cleaned up), Plaintiffs turn to the flawed claim that "plaintiffs have proceeded under § 1983 in similar election-day cases in the Ninth Circuit and other courts." Resp. at 6 (collecting cases). But they neglect to mention that the Election Day Statute claims in each of those cases *failed*; in each instance the court of appeals affirmed the *dismissal* of such claims on independently sufficient grounds.[6] This Court, of course, may do the same. After all, "the absence of a valid . . . cause of action does not implicate subject-matter jurisdiction," *Lexmark*, 572 U.S. at 128 n.4, 134 (citation omitted), so "when a plaintiff lacks a cause of action, courts dismiss the case under Rule 12(b)(6)" rather than Rule 12(b)(1), *Cotton v. Noeth*, 96 F.4th 249, 260 (2d Cir. 2024) (Walker, J., concurring); *see also Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (explaining that "lack of *statutory* standing requires dismissal for failure to state a claim" rather than "lack of Article III standing"). The fact that other courts have uniformly rejected similar claims on one merits ground rather than another does nothing to vindicate Plaintiffs' claim to an enforceable federal right.

Plaintiffs' last gasp is to suggest that "federal laws establishing a uniform election day protect the fundamental rights to vote and stand for office." Resp. at 6. And if Plaintiffs alleged an actual injury to those fundamental rights, they might well be able to sue under § 1983. But as explained above, the Ballot Receipt Deadline does not make it harder for anyone to vote—it makes it easier. And it has no effect on anyone's ability to stand for office. So whatever might be the case if an alleged statutory violation caused injuries to constitutional rights, such as by disenfranchising voters who voted in compliance with federal law or depriving duly elected officials of their offices, Plaintiffs have alleged no impairment of fundamental rights that could allow them to sue under § 1983 here.

---

[6] *See Voting Integrity Project, Inc. v. Keisling*, 259 F.3d 1169, 1176 (9th Cir. 2001) (affirming grant of summary judgment to defendants); *Voting Integrity Project, Inc. v. Bomer*, 199 F.3d 773, 777 (5th Cir. 2000) (same); *Millsaps*, 259 F.3d at 549 (same). !!!

- 11 -
INTERVENOR-DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

## CONCLUSION

For the foregoing reasons, Intervenor-Defendants respectfully request that the Court dismiss Plaintiffs' claims as a matter of law.

Dated: June 28, 2024

Respectfully submitted,

**ELIAS LAW GROUP LLP**

By: */s/ Daniel Bravo*

David R. Fox (NV Bar No. 16536)
Christopher D. Dodge (*pro hac vice*)
**Elias Law Group LLP**
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
(202) 968-4490
dfox@elias.law
cdodge@elias.law

Bradley S. Schrager (NV Bar No. 10217)
Daniel Bravo (NV Bar No. 13078)
**Bravo Schrager LLP**
6675 South Tenaya Way, Suite 200
Las Vegas, NV 89113
(702) 996-1724
bradley@bravoschrager.com
daniel@bravoschrager.com

*Attorneys for Intervenor-Defendants*

INTERVENOR-DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 28th day of June, 2024, a true and correct copy of Intervenors' Motion to Dismiss was served via the United States District Court's CM/ECF system on all parties or persons requiring notice.

By: */s/ Dannielle Fresquez*
Dannielle Fresquez, an Employee of
Bravo Schrager LLP